**FRANK TAMBONE, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE and United States of America, Respondents.**

**No. 94–1291.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 24, 1995.

Decided March 31, 1995.

Stephen P. McCarron, Washington, DC, argued the cause and filed the briefs, for petitioner.

M. Bradley Flynn, Atty., U.S. Dept. of Agriculture, Washington, DC, argued the cause, for respondents. With him on the brief, was James M. Kelly, Associate Gen. Counsel, U.S. Dept. of Agriculture, Washington, DC. Raymond W. Fullerton, Washington, DC, entered an appearance, for respondents.

Before: WALD, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is a petition for review of final action of the United States Department of Agriculture against Frank Tambone, Inc., pursuant to the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §§ 499a–499s (1988 & Supp. IV 1992).

Born in 1925, Frank Tambone has been in the produce business all of his working life. He began selling mushrooms from a van, added tomatoes, and eventually expanded into a full-scale wholesale produce business, servicing customers in the Philadelphia–Delaware Valley–New Jersey area. His two sons joined him in the business. He incorporated his company as Frank Tambone, Inc., of which he was the president and sole shareholder. With a dealer's license from the Agriculture Department (7 U.S.C. §§ 499a(b)(6), 499d), the company purchased perishable agricultural commodities from suppliers, warehoused the produce, and resold it to long-term customers such as universities, hotels, nightclubs and restaurants. Tambone personally received numerous awards from restaurant associations and other groups. Until this case, the Department of Agriculture had never filed any disciplinary proceedings against Tambone or his company.

On October 27, 1991, a fire destroyed Tambone's business. Lost in the fire were $125,000 worth of produce; incoming payments totalling between $30,000 and $40,000; a warehouse; eleven trucks; forklifts; computers; and the company's business records. Tambone, Inc. ceased operations and began the task of reconstructing its accounts receivable and accounts payable. When informed of the fire, the Secretary–Treasurer of the Philadelphia Produce Credit Bureau advised all merchants in the Philadelphia produce market to file "trust notices" pursuant to 7 U.S.C. § 499e(c). Under this section, the dealer holds in trust for the benefit of all unpaid suppliers the perishable agricultural commodities it receives from them and the proceeds of the sales of these products. 7 U.S.C. § 499e(c).

During the period August 16, 1991, through November 18, 1991, Tambone, Inc. owed its suppliers $204,596.54, the total amount due to twelve firms for 158 shipments of perishable agricultural commodities. Of this total, $150,000 had been due and owing for forty days or less; the balance had been outstanding for forty to sixty days. The Act requires "full payment promptly" (7 U.S.C. § 499b(4)). The Secretary's regulations define prompt payment to mean within ten days of the date the purchaser accepts the produce, unless the parties to the transaction have agreed in writing to a longer period. 7 C.F.R. § 46.2(aa)(5) & (11). Tambone, Inc. apparently had such agreements with its suppliers but the agreements were not in writing.

54

After the fire, Tambone, Inc. deposited receipts from its customers in a separate account and distributed these funds to its trust creditors. The company also filed a claim with Nationwide Insurance Company under its fire insurance policy. When Nationwide denied the claim, Tambone, Inc. brought suit in federal district court. In July 1993, the court entered judgment for Tambone, Inc., and the company distributed the net proceeds of its recovery to its produce suppliers.

In the meantime, in May 1992, the Director of the Department of Agriculture's Fruit and Vegetable Division, Agricultural Marketing Service, issued a complaint against Tambone, Inc. for violating § 499b(4), the prompt payment provision of the Act. By the date of the hearing, in May 1993, Tambone, Inc. had paid more than $130,000 to its creditor-suppliers, with whom it had reached a settlement. The Administrative Law Judge and, on agency review, the Judicial Officer, found that "[p]rior to the date of the fire, [Tambone, Inc.] and its president, Frank Tambone, as its predecessor, in more than forty years in the industry, had never had any trust notices or reparation complaints filed against it." Nevertheless, the Judicial Officer, adopting the ALJ's findings and conclusions, determined that Tambone, Inc. had committed "flagrant and repeated violations of the Act." Even if the fire had caused part of the problem for Tambone, Inc., the company's repeated failures to pay its suppliers within ten days violated the Act. The Act authorizes the Secretary to suspend a dealer's license for not more than ninety days whenever the dealer has violated § 499b, or to revoke the license if the violation is "flagrant or repeated," "and/or" to "publish the facts and circumstances of such violation," 7 U.S.C. § 499h(a). In this case, there was no license to suspend or revoke. Rather than incur the annual renewal fee, Tambone, Inc. allowed its license to expire in January 1993.

On February 2, 1994, the Judicial Officer therefore ordered, as a sanction, publication of his findings, effective thirty days after service of the order on Tambone, Inc. At oral argument, the parties stated that the order had not yet become effective because of the pendency of this petition for review. Publication, a "clearly authorized" agency action (*Farley & Calfee, Inc. v. Department of Agriculture*, 941 F.2d 964, 967 (9th Cir. 1991)), will have the following consequences. If Tambone, Inc. or any persons "responsibly connected" with the company, such as Frank Tambone, apply for a license within two years of the order's effective date, 7 U.S.C. § 499d(b)(B) requires the Secretary to deny the application. In addition, after publication of the findings, persons "responsibly connected" to Tambone, Inc. need the Secretary's approval in order to work for other dealers, brokers or commission merchants holding licenses under the Act. 7 U.S.C. § 499h(b). The Secretary may give such approval one year after the order's effective date, but only on condition that the employer posts a surety bond; the "Secretary may approve employment without a surety bond after the expiration of two years from the effective date of the applicable disciplinary order." *Id.*

■ Tambone, Inc. does not contest the Judicial Officer's decision that its paying suppliers more than ten days after they delivered produce, without written agreements allowing these terms, constituted flagrant or repeated violations of the Act's prompt payment provision and the regulations thereunder. The company does dispute the Judicial Officer's determination that its violations were willful. Tambone, Inc. may be right that the fire, and the delay in recovering on the fire insurance policy, made it impossible for the company to satisfy its debts in full. But there is still the matter of timeliness. Suppose these events had not occurred. Tambone, Inc. would have continued violating the regulations by failing to pay its suppliers within ten days. And neither the fire of October 27, 1991, nor the later insurance collection problem explain why Tambone, Inc. had delayed making payments due and owing for more than ten days before the fire occurred. A violation is willful, the Judicial Officer said, if a "person intentionally does an act prohibited by a statute or if a person carelessly disregards the requirements of a statute." *But see Ratzlaf v. United States,* — U.S. —, — – —, 114 S.Ct. 655, 659–62, 126 L.Ed.2d 615 (1994). Given the

Judicial Officer's unchallenged definition, substantial evidence supported his finding that Tambone, Inc. willfully failed to pay its suppliers "promptly," as the Act required.

■ The matter of the sanction presents a different question. The ALJ's opinion, adopted by the Judicial Officer, described publication in this case as an "admittedly harsh sanction," but one that "has consistently been upheld by the Federal Circuit Courts." The ALJ followed this statement with citations to eight opinions of the courts of appeals, including our opinion in *Finer Foods Sales Co. v. Block*, 708 F.2d 774 (D.C.Cir.1983). All of the cases dealt with orders of the Secretary issued before 1991, when the Secretary's policy was that "mitigating circumstances are irrelevant." *Finer Foods*, 708 F.2d at 782. While mitigating circumstances may still be irrelevant in determining whether a person violated the Act, which is all that *Finer Foods* actually decided, mitigating circumstances are no longer irrelevant with respect to the choice of sanctions. In 1991 the Secretary adopted a new policy on this subject:

> It is appropriate to state expressly the practice that has been followed by the Judicial Officer in recent cases, *viz.*, that reliance will no longer be placed on the "severe" sanction policy set forth in many prior decisions, e.g. *In re Spencer Livestock Comm'n Co.*, 46 Agric. Dec. 268, 435–62 (1987), *aff'd on other grounds*, 841 F.2d 1451 (9th Cir.1988). Rather, the sanction in each case will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all the relevant circumstances, always giving appropriate weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose.

*In re S.S. Farms Linn County, Inc.*, 50 Agric.Dec. 476, 497 (1991).

Given this administrative shift, we were "puzzled" in *Norinsberg Corp. v. Department of Agriculture*, 47 F.3d 1224, 1227 (D.C.Cir. 1995), when the Department invoked *Finer Foods* to support the sanction there, and we are no less mystified by the Department's brief in this case, which again relies on *Finer Foods* without mentioning *S.S. Farms*. The ALJ and the Judicial Officer were more attentive. The ALJ quoted *S.S. Farms*, and the Judicial Officer, in a statement appended to the ALJ's opinion, did the same, adding: "However, for the reasons set forth by the ALJ, the sanction of publishing the finding that Respondent has committed willful, flagrant and repeated violations of the Act, which is the only sanction authorized by the Act, is appropriate here."

In the administrative proceedings, Tambone, Inc. pointed to its record of forty years in the business without a single disciplinary charge having been lodged against it or its predecessor; Tambone, Inc.'s history of always paying its suppliers in full; the disastrous consequences of the fire; and the problems caused by the insurance company's refusal to honor its policy with the company. The ALJ answered that none of these factors rendered it inappropriate to issue some sort of sanction and that publication therefore must be ordered because, as the Judicial Officer also observed, publication is "the only sanction available for a violating entity which is no longer licensed...."

■ We agree with the Department that the Act authorized the sanction of publication in this case and that the Secretary has wide latitude in fashioning an appropriate remedy. *See Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 189, 93 S.Ct. 1455, 1459, 36 L.Ed.2d 142 (1973). And we agree with Tambone, Inc. that the Judicial Officer was bound to comply with the Department's newly-announced policy of considering mitigating circumstances in determining what sanction to impose. *See ABL Produce, Inc. v. Department of Agriculture*, 25 F.3d 641, 646 (8th Cir.1994). In the administrative proceedings the ALJ, the Judicial Officer and Tambone, Inc. treated the matter of remedy as an all-or-nothing proposition. Either there would be the sanction of publication, or there would be no sanction whatsoever against the company. The assumption was that mitigating circumstances bore not on the severity of the sanction, but on whether the only possible sanction—publication—would be imposed. Before us the parties continue

to entertain the same assumption. Whether they are correct is therefore a subject about which we express no view.†

As to the validity of the sanction ordered here, the Judicial Officer's decision conformed with *S.S. Farms*. Tambone, Inc.'s repeated failure to make prompt payments to its suppliers constituted serious breaches of the Act. Many of the violations occurred even before the fire. There was some evidence that Tambone, Inc. was experiencing financial difficulties before October 27, 1991. Publication makes the industry aware that the Secretary is intent on enforcing § 499b(4) so that, in the words of the ALJ, "only financially responsible persons are in the industry." While Tambone, Inc.'s good record over a long period of time and its difficulties with the insurance company militated in its favor, the reasons expressed by the Judicial Officer adequately explained why these considerations were insufficient to exonerate the company or to render the imposition of any sanction inappropriate. Repeated and flagrant violations demand some sort of response even when the offender no longer possesses a license, or so the ALJ and the Judicial Officer believed. When it comes to the choice of a remedy, the Judicial Officer's judgment must be sustained so long as he has complied with the statute and the regulations, adhered to the Department's announced policy on sanctions, and, to the extent his judgment rests on findings of fact, has substantial evidence to back it up. *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. at 189, 93 S.Ct. at 1459. The Judicial Officer in this case acted in conformity with those requirements.

*The petition for review is denied.*

---

† The Judicial Officer rendered his decision on February 2, 1994. By that time Tambone, Inc. already had been without a license for more than a year. The order has not yet become effective; publication will result in a prospective bar under § 499d(b)(B), preventing the company from obtaining a license for two years. The bar will run from the effective date of this publication order, which will occur after we render our decision here. Why the bar necessarily should be entirely prospective—why, in other words, the effective date cannot be made retroactive—is a matter the Judicial Officer did not address, doubtless because no one raised the point. Even before *S.S. Farms*, at least one ALJ made the effective date of a publication order retroactive. *See Farley & Calfee*, 941 F.2d at 966. But, as we have said, the point was not raised in the administrative proceedings and it has not been argued here.