TOM LANGE COMPANY,
INCORPORATED,
Plaintiff–Appellee,

v.

A. GAGLIANO COMPANY, INCORPO-
RATED, Defendant–Appellant.

No. 94–3085.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1995.

Decided Aug. 1, 1995.

Thomas L. Smallwood, Terence B. Kelly (argued), Borgelt, Powell, Peterson & Frauen, Milwaukee, WI, for plaintiff-appellee.

Robert G. LeBell (argued), Styler, Kostich, Lebell, Dobroski & McGuire, Milwaukee, WI, for defendant-appellant.

Before POSNER, Chief Judge, RIPPLE, Circuit Judge, and NORGLE, District Judge.[*]

RIPPLE, Circuit Judge.

In this case arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.*, the A. Gagliano Company appeals the decision of the district court which, after a de novo trial, affirmed a reparation order issued by the Department of Agriculture. Because we believe that the district court employed an erroneous standard in its evaluation of the evidence on the issue of whether Tom Lange Company consented to Gagliano's dumping of produce, we reverse the judgment of the district court and remand for further proceedings.

## I

### BACKGROUND

#### A. *Facts*

Tom Lange Co. ("Lange") agreed to ship lettuce and artichokes for growers John and Stephen Jordan. Lange shipped the produce from California to A. Gagliano Company's ("Gagliano") facility in Milwaukee, Wisconsin on a "price after sale" basis.[1] The produce arrived on September 13, 1988. Gagliano inspected it and determined that, although the artichokes were fine, the lettuce was of poor quality. Mr. Gagliano telephoned David Osborn, an agent of Lange, and discussed "dumping" the lettuce. Mr. Gagliano received oral authority to dump whatever lettuce he could not sell. Moreover, Osborn informed Mr. Gagliano that Lange would not require a federal dumping certificate because Lange did not wish to incur the extra cost of obtaining the certificate.

Gagliano was able to sell only a small quantity of the lettuce. The remaining lettuce was never inspected by government officials. However, on September 28, 1988, Gagliano obtained three letters from disinterested merchants who stated that the lettuce they inspected (376 cartons) had no commercial value. Gagliano dumped 485 of the 665 cartons of lettuce it had received from Lange.[2] Gagliano did not pay Lange for any of the lettuce that it dumped. On October 14, 1988, Gagliano remitted an "account of sale" to Lange which stated that net sales of the lettuce were $1,931.50. After various deductions, including Gagliano's commission, and after a revised accounting, Gagliano issued Lange a check for $942.05, which Lange accepted.

#### B. *Earlier Proceedings*

##### 1.

The Jordans requested full payment from Lange, and Lange in turn from Gagliano. The parties ultimately filed claims under the Perishable Agricultural Commodities Act, which were consolidated before the Department of Agriculture. Because less than $15,000 was at stake, the Department's Judicial

---

[*] The Honorable Charles R. Norgle, Sr., of the District Court for the Northern District of Illinois, is sitting by designation.

1. Neither the Secretary's regulations nor the U.C.C. define the term "price after sale." The Secretary has indicated that "[u]nder this term the receiver ... is expected to resell the merchandise after arrival and the receiver and the seller are expected to agree upon a price in the light of the prices realized by the receiver." *La Verne Co–Operative Citrus Ass'n v. Mendelson–Zeller Co.*, 46 Agric.Dec. 1673, 1987 WL 118971, at *5 (1987); *see also M. Offutt Co. v. Caruso Produce, Inc.*, 49 Agric.Dec. 596, 1990 WL 320373, at *5 (1990) ("[P]rice after sale ... mean[s] agreement upon a price after completion of resales of the produce.").

2. The Secretary's findings of fact state that Gagliano had dumped 485 cartons, R.6 at 4, ¶ 11; the district court adopted these findings, but did not comment on the specific quantity of lettuce dumped. We note that the dumping receipt in the Record indicates that Gagliano dumped 484 cartons. *See* R.6 at RX–5 (shipping ticket of United Waste Systems).

Officer, acting for the Secretary pursuant to 7 C.F.R. § 2.35(a), conducted an expedited proceeding that did not allow for oral testimony, *see* 7 U.S.C. § 499f(d); 7 C.F.R. § 47.15(a). After reviewing documentary evidence and the parties' arguments, the Judicial Officer determined that Gagliano owed Lange $3,468.26 plus interest. *See Tom Lange Co. v. Gagliano*, 50 Agric.Dec. 1027, 1991 WL 295171 (1991). The Judicial Officer concluded that Gagliano had violated 7 C.F.R. § 46.23, which requires merchants to obtain a federal certificate before dumping more than five percent of a shipment. He noted that Gagliano could not explain its failure to obtain the required governmental inspection. Alternatively, he found that the three letters Gagliano obtained on September 28, 1988 were not probative of the lettuce's quality on September 13. Gagliano moved for reconsideration on the ground that 7 C.F.R. §§ 46.22 and 46.23 did not apply to price after sale transactions. The Judicial Officer rejected Gagliano's claim, citing *Cleveland Celery Market Co. v. Central Foods, Inc.*, 40 Agric.Dec. 858, 1981 WL 31818 (1981). The Judicial Officer also noted that *Anonymous*, 5 Agric.Dec. 25 (1943), which predated the promulgation of sections 46.22 and 46.23, indicated that Gagliano was subject to a general requirement to procure a dumping certificate.

### 2.

Gagliano sought review in the district court. *See* 7 U.S.C. § 499g(c).[3] The court adopted the Secretary's findings of fact as supplemented by Anthony Gagliano's unrebutted trial testimony that Lange, through its agent David Osborn, had given Gagliano permission to dump the lettuce without obtaining a federal certificate. Despite this additional evidence, the district court affirmed. *See* 859 F.Supp. 356 (E.D.Wis.1994). The court initially determined that Department of Agriculture regulations 7 C.F.R.

§§ 46.22 and 46.23 were applicable. It reasoned that, although they did not mention "price after sale" transactions by name, the regulations applied to any transaction in which one party handled goods "for or on behalf of another person." Next, the court held that, even though the regulations provided that reasonable cause for dumping could be established by the shipper's "specific consent," 7 C.F.R. § 46.23, and that no dumping certificate was necessary if there was a "specific agreement to the contrary," *id.* § 46.22, Gagliano's oral agreement with Lange was insufficient. The court noted that 7 C.F.R. §§ 46.14 and 46.15 require parties to keep detailed records for "all transactions" and "each lot" of produce. Relying on these provisions, the court concluded that any "specific consent" to dump or "specific agreement" that a dumping certificate was unnecessary had to be in writing.

### II

### DISCUSSION

#### A. *Statutory & Regulatory Scheme*

The Perishable Agricultural Commodities Act ("PACA") "was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous." S.Rep. No. 2507, 84th Cong., 2d Sess. 3 (1956) (incorporating H.R.Rep. No. 1196, 84th Cong., 1st Sess. 2 (1956)), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701. "The law was designed primarily for the protection of the producers of perishable agricultural products—most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend

---

**3.** This provision provides, in relevant part:

Either party adversely affected by the entry of a reparation order by the Secretary may, within thirty days from and after the date of such order, appeal therefrom to the district court.... Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, ex-

cept that the findings of fact and order or orders of the Secretary shall be prima facie evidence of the facts therein stated. Appellee shall not be liable for costs in said court and if appellee prevails he shall be allowed a reasonable attorney's fee to be taxed and collected as part of his costs.

7 U.S.C. § 499g(c).

for their payment upon his business acumen and fair dealing—and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for." *Id.; see also In re Lombardo Fruit & Produce Co.*, 12 F.3d 806, 808 (8th Cir.1993) ("PACA was designed to protect small farmers and growers from the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.") (quotation and citations omitted); *Harry Klein Produce Corp. v. U.S. Department of Agric.*, 831 F.2d 403, 405 (2d Cir. 1987) ("The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility.").

Pursuant to these congressional goals, PACA proscribes a series of "sharp business practices." *See* 7 U.S.C. § 499b. One provision makes it unlawful "in or in connection with any transaction in interstate or foreign commerce,"

> [f]or any commission merchant to discard, dump, or destroy without reasonable cause, any perishable agricultural commodity received by such commission merchant in interstate or foreign commerce.

*Id.* § 499b(3). The operative phrases in this subsection are "commission merchant" and "reasonable cause." PACA explicitly defines the former term, *see id.* § 499a(b)(5),[4] but

nowhere defines the latter. However, a Department of Agriculture regulation provides that "reasonable cause" for dumping exists when produce "has no commercial value or when it is dumped by order of a local health officer or other authorized official or when the shipper has specifically consented to such disposition." 7 C.F.R. § 46.23. The Department's regulations further provide that "a clear and complete record shall be maintained showing justification for produce received on joint account, on consignment, or handled for or on behalf of another person." 7 C.F.R. § 46.22. Additional requirements apply in such circumstances to commission merchants who dump an appreciable percentage of a shipment. Section 46.22 provides that "if five percent or more of a shipment is dumped an official certificate, or other adequate evidence, shall be obtained to prove the produce was actually without commercial value, unless there is a specific agreement to the contrary between the parties." *Id.*[5] In addition, section 46.23 provides that "proof as to the quantities of produce destroyed or dumped in excess of five percent of the shipment shall be provided by procuring an official certificate showing that the produce has no commercial value from any person authorized by the Department to inspect fruits and vegetables." *Id.* § 46.23. Section 46.23 authorizes alternative means of certification when federal inspectors are unavailable.[6]

---

4. "The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5).

5. Section 46.22 provides:

A clear and complete record shall be maintained showing justification for produce received on joint account, on consignment, or handled for or on behalf of another person if any portion of such produce regardless of percentage cannot be sold due to poor condition or is lost through resorting or reconditioning. In addition to the foregoing, if five percent or more of a shipment is dumped an official certificate, or other adequate evidence, shall be obtained to prove the produce was actually without commercial value, unless there is a specific agreement to the contrary between the parties. The original certificate or other adequate evidence justifying dumping shall be forwarded to the consignor or joint account partner with the accounting and a copy shall be retained by the receiver.

7 C.F.R. § 46.22.

6. Section 46.23 provides:

Reasonable cause for destroying any produce exists when the commodity has no commercial value or when it is dumped by the order of a local health officer or other authorized official or when the shipper has specifically consented to such disposition. The term "commercial value" means any value that a commodity may have for any purpose that can be ascertained by the exercise of due diligence without unreasonable expense or loss of time. When produce is being handled for or on behalf of another person, proof as to the quantities of produce destroyed or dumped in excess of five percent of the shipment shall be provided by procuring an official certificate showing that the produce had no commercial value from any person authorized by the Department to inspect fruits and vegetables. Where any

## B. *Gagliano's Dumping*

The parties do not dispute that Gagliano is a "commission merchant" as defined by the Act. Thus, the relevant inquiry in this case is whether Gagliano had reasonable cause for dumping the lettuce it received from Lange. Initially, Gagliano argues that 7 C.F.R. §§ 46.22 and 46.23 do not apply to "price after sale" transactions. Gagliano maintains that the regulations cover those transactions involving unexpected damage to produce, but not transactions that are based on an implicit understanding that the produce is already substandard. Gagliano also contends that it had reasonable cause to dump. It emphasizes that unrebutted trial testimony established that Lange gave Gagliano authority to dump the lettuce and that Lange specifically instructed Gagliano that no federal certificate was necessary. Lange responds that the language of sections 46.22 and 46.23 make clear that they apply to the transaction at issue. It then submits that the district court properly determined that the regulations require written evidence of any "specific consent" to dump or "specific agreement" that no dumping certificate is necessary.

### 1.

■ We begin our analysis with the statutory directive. The statute makes it unlawful, "in connection with *any transaction* in interstate or foreign commerce," for commission merchants to dump any perishable agricultural commodity without "reasonable cause." 7 U.S.C. § 499b(3) (emphasis added). This language makes clear that the standard set forth in the first sentence of 7 C.F.R. § 46.23 applies to all transactions, including the one between Lange and Gagliano. *See also* 7 C.F.R. § 46.23 ("Reasonable cause for dumping *any* produce exists ... [.]") (emphasis added). The transaction in this case occurred in interstate commerce and consequently was subject to the statutory prohibition on dumping. Therefore, the transaction was subject to 7 C.F.R. § 46.23's definition of "reasonable cause." The transaction likewise was subject to the second sentence of section 46.23, which defines the term "commercial value," used in section 46.23's first sentence, as "any value that a commodity may have for any purpose that can be ascertained by the exercise of due diligence without unreasonable expense or loss of time." 7 C.F.R. § 46.23.

Whether the transaction between Lange and Gagliano is subject to the remainder of section 46.23 and section 46.22 is less clear. The remaining portions of these regulations are limited in scope; rather than applying to "any transaction," they apply only to situations in which the relationship of the seller and purchaser is more interdependent than that found in a simple seller-purchaser agreement. The precise scope of this part of the regulations, in particular, the regulations' applicability to the transaction in this case, is a difficult question. The remainder of section 46.23, by its terms, sets out requirements that apply only "[w]hen produce is handled for or on behalf of another person." 7 C.F.R. § 46.23. Similarly, section 46.22, in its entirety, applies only when produce is "received on joint account, on consignment, or handled for or on behalf of another person." *Id.* § 46.22.

such inspection service is not available certification may be obtained from (a) any health officer or food inspector of any State, county, parish, city or municipality or of the District of Columbia; (b) any established commercial agency or service making inspections for the fruit and vegetable industry; or (c) when no inspector or health officer designated above is available consideration will be given to other evidence such as inspection and certification made by any two persons having no financial interest in the produce involved or in the business of any person financially interested therein, and who are unrelated by blood or marriage to any such financially interested person, and who, at the time of the inspection and certification, and for a period of at least one year immediately prior thereto, have been engaged in the handling of the same general kind or class of produce with respect to which the inspections and certification are to be made. Any certificate issued by any persons designated in paragraph (c) of this section shall include a statement that each of them possesses the requisite qualifications. Any such certificate shall properly identify the produce by showing the commodity, lot number, brand or principal identifying marks on the containers, quantity dumped, name and address of shipper, name and address of applicant, condition of the produce, time, place, and date of inspection and a statement that the produce possesses no commercial value.

7 C.F.R. § 46.23.

■ It is possible to conclude that these remaining parts of the two regulations apply only to transactions in which title is not passed completely to the purchaser upon the arrival of the goods. The regulations specifically speak of "consignment" transactions; the shipper retains title in such transactions. Moreover, the regulations define "joint account transactions" as those involving joint ventures between two or more persons who agree to share costs, profits, and losses. *See* 7 C.F.R. § 46.2(s); *see also* 7 C.F.R. § 46.43(hh) (indicating that those involved in joint account transactions are partners). Finally, the regulations can be read as suggesting that the phrase "for or on behalf of another person" is generic terminology intended to encompass all consignment-type transactions.[7] It also can be argued that several interpretations of the regulations by the Secretary support the view that these parts of sections 46.22 and 46.23 are limited to transactions in which title does not pass completely to the "purchaser" upon delivery.[8] In one decision, the Secretary noted that, when a transaction involves "a sale, [and] not a consignment," the certification provisions of sections 46.22 and 46.23 are inapplicable. *See Carmack v. Selvidge*, 51 Agric.Dec. 892, 1992 WL 694322, at *8 (1992). *Carmack* involved a "price after arrival" sales arrangement, as opposed to a "price after sale" transaction, and the two are distinct.[9] However, both involve open price terms, *see M. Offutt Co. v. Caruso Produce, Inc.*, 49 Agric. Dec. 596, 1990 WL 320373, at *5 (1990), and the Secretary specifically held in *La Verne Co–Operative Citrus Ass'n v. Mendelson–Zeller Co.*, 46 Agric.Dec. 1673, 1987 WL

118971, at *5 (1987), a case that did not involve an interpretation of the regulations at issue here, that "price after sale" arrangements, as open-priced sales transactions, are not consignments. *Carmack* and *La Verne* can be read together to conclude that price after sale transactions are not subject to section 46.22 and the third sentence of section 46.23 because there is no consignment.

The district court did not follow the interpretative path outlined in the above paragraph. Rather, it concluded that the "for or on behalf of another" language of the regulations "very easily applies to 'price after sale' transactions." *See* 859 F.Supp. at 362. The district court's interpretation can command a good deal of support in the policy that clearly animates both the statute and the regulations read as a whole. The "price after sale" arrangement at issue here, like a consignment, does not assure the shipper of produce that he will receive a specific price for his goods. In each instance, the shipper faces a not insignificant risk of being victimized by the "sharp business practices" of the recipient of the goods. By his unilateral actions, the recipient can control the price. *Cf. In re Lombardo Fruit & Produce Co.*, 12 F.3d at 808 (noting that PACA was designed to protect small farmers and growers from sharp business practices). Indeed, the interpretation of the Secretary's rulings as not applying sections 46.22 and 46.23 to price after sale transactions is open to criticism on its own terms. In several decisions prior to *Carmack*, the Secretary applied either section 46.22 or the certification requirement of section 46.23 in cases involving sales transactions as opposed to consignments. *See, e.g.,*

---

7. *See, e.g.,* 7 C.F.R. § 46.22 (noting in first sentence that regulation applies to sales on joint account, consignment, or for or on behalf of another person, but providing in final sentence that "[t]he original certificate or other adequate evidence justifying dumping shall be forwarded to the consignor or joint account partner with the accounting and a copy shall be retained by the receiver").

8. As a general proposition, the interpretations of the Secretary, as the officer charged with the administration of the statute, are entitled to deference. *See Harry Klein Produce*, 831 F.2d at 406 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844,

104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)); *see generally Green v. Shalala*, 51 F.3d 96, 99 (7th Cir.1995) ("An agency's interpretation of its own regulation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.") (quotation and citation omitted).

9. *See M. Offutt Co. v. Caruso Produce, Inc.*, 49 Agric.Dec. 596, 1990 WL 320373, at *5 (1990) (explaining that, in price after arrival transactions, price is set prior to resale, whereas in price after sale transactions, price is set after resale). *Compare* 7 C.F.R. § 46.43(cc) (defining "price after arrival") *with supra* note 1 (defining "price after sale").

*Jameson v. Valerio's Produce Co.*, 46 Agric. Dec. 653, 1985 WL 62906 (1985); *Cleveland Celery Market Co. v. Central Foods, Inc.*, 40 Agric.Dec. 858, 1981 WL 31818 (1981); *Bagley Produce Co. v. Simpson*, 39 Agric.Dec. 456, 1980 WL 21163 (1980). In at least one of these transactions, *Jameson*, a "price after" arrangement was at issue. Indeed, in this very case, the Secretary applied the regulations to a "price after sale" transaction, and, on reconsideration, cited *Cleveland Celery* in response to Gagliano's argument that the regulations did not apply. Therefore, it is quite possible that the district court's interpretation of the regulations is correct or that, at the very least, no reasoned interpretation of the regulations to which we owe deference exists.[10] *Carmack* did not explain why it apparently was departing from the Secretary's earlier decisions; in this case, the Secretary similarly failed to explain why *Carmack* did not govern.

**2.**

Although we suggest that the Secretary clarify the regulations at the earliest possible opportunity, we need not resolve in this case the question whether section 46.22 and the third sentence of section 46.23 apply to price after sale transactions. Whether these explicit provisions apply or not, this case, as our colleague in the district court noted, turns upon whether Lange consented to Gagliano's dumping and agreed that no dumping certificate was necessary. As we noted above, the first sentence of section 46.23 requires Gagliano to establish reasonable cause for dumping via (1) evidence that the lettuce had no commercial value, or (2) proof that a local health officer ordered the dumping, or (3) evidence that Lange "specifically

consented" to the dumping. Gagliano provided no certificate or other evidence establishing that the lettuce lacked commercial value when it arrived September 13, 1988. It therefore cannot establish "reasonable cause" absent proof that Lange "specifically consented" to the dumping. Assuming the certification requirements of section 46.22 and the third sentence of section 46.23 do not apply, Gagliano still faced a general obligation to document its dumping. Indeed, in *Carmack*, the Secretary noted that, although the regulations did not apply, "in a sale transaction, dumping of any portion must [still] be substantiated by a dump certificate or other appropriate evidence." 51 Agric.Dec. 892, 1992 WL 694332, at *8.

We therefore turn to the question whether Gagliano presented sufficient evidence of Lange's consent. At trial, Mr. Gagliano provided unrebutted testimony that Lange, through its agent David Osborn, orally consented to Gagliano's dumping of the lettuce by telling Gagliano "try to sell it, and if you can't sell it, dump it." R.30 at 46. The precise terms of the waiver, however, are not clear. Mr. Gagliano testified that he was told not to incur the expense of obtaining a federal inspection. At one point, he claimed that Lange told him, "just get some certification of the dump at your local level," *id.* at 38, although he later testified that Lange declined any type of certification, *id.* at 39 ("[Lange] declined the certificates. They declined anything."). There was also evidence that Lange accepted a check tendered in payment for the lettuce that was sold and that Gagliano obtained assessment from other merchants to corroborate his estimation of the condition of the lettuce. The district court did not address this evidence at length

10. *See Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 412 (7th Cir.1987) ("When an agency waffles without explanation, taking one view one year and another the next, this may show the absence of a real decision[.]"); *cf. Continental Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1094 (7th Cir.1984) (denying enforcement of decision in which agency had adopted a new position without giving any "plausible reason why differences that had seemed unimportant for many years actually had determinative significance"). We note that we are not the only circuit to express recent concern over the Secretary's apparent ignorance of its own legal interpretations.

*See Frank Tambone, Inc. v. U.S. Department of Agric.*, 50 F.3d 52, 55 (D.C.Cir.1995) (noting that court was "mystified" by the Department's brief, which relied on an earlier judicial precedent without reference to an intervening change in the Secretary's policy that appeared to supplant it, but noting that the ALJ and Judicial Officer had adhered to the new policy); *Norinsberg Corp. v. U.S. Department of Agric.*, 47 F.3d 1224, 1227 (D.C.Cir.1995) (noting that court was "somewhat puzzled by the Secretary's argument" that the judicial precedent discussed in *Frank Tambone* controlled in light of the intervening policy change).

because it believed that "specific consent" for dumping and "specific agreements" to waive certification had to be in writing.

█ It is on this point that we find ourselves in respectful disagreement with our colleague in the district court. Our disagreement is, however, a very narrow one. We agree, given the policy concerns that animate PACA and the general record-keeping requirements set forth in the regulations, *see, e.g.,* 7 C.F.R. §§ 46.14, 46.15, that, in the absence of a writing, there is a presumption against finding that a shipper either has consented to dumping or has agreed that no certification for dumping is necessary. *Cf. Jameson v. Valerio's Produce Co.,* 46 Agric. Dec. 653, 1985 WL 62906, at *3 (1985) (indicating that proof of dumping rule is intended to protect shippers and growers of produce and holding that, although there therefore is a presumption against waiver, oral waivers of the proof of dumping requirement are per-

missible); *Bagley Produce Co. v. Simpson,* 39 Agric.Dec. 456, 1980 WL 21163, at *2 (1980) (holding that shipper "acquiesce[d] in the dumping of produce," because unrebutted evidence established that shipper's agent consented to dumping; no written agreement evincing such consent was produced or mentioned). As the above cases illustrate, however, the Secretary has not held, on a consistent basis,[11] that a writing is necessary in all cases. Nothing in sections 46.22 or 46.23 expressly requires that a shipper's "specific consent" to dump or "specific agreement" to waive certification be in writing. In contrast, several of the Secretary's regulations make clear when a writing is necessary for compliance,[12] and one expressly requires "specific written permission." *See* 7 C.F.R. § 46.29(a) (discussing averaging or pooling of sales). Because the regulations demonstrate that the Secretary has required specifically that a document be in writing, the absence of any

---

**11.** We note that one decision of the Secretary suggests that any waiver of proof of dumping must be in writing. *See U.S. Gateways, Inc. v. Finest Fruit, Inc.,* 45 Agric.Dec. 2430, 1986 WL 75633, at *3 (1986). We decline to accept the categorical approach set forth in *U.S. Gateways* because *U.S. Gateways* does not cite any authority to support its conclusion and does not discuss *Jameson,* which a year earlier held that oral waivers are permissible. Furthermore, *U.S. Gateways* does not explain why a writing requirement should be read categorically into sections 46.22 and 46.23 when, as we explain in the text, numerous other Department of Agriculture regulations contain explicit writing requirements.

**12.** *See, e.g.,* 7 C.F.R. § 46.2(aa)(11) ("Parties who elect to use different terms of payment than those set forth ... must reduce their agreement to writing before entering into the transaction[.]"); 7 C.F.R. § 46.13(a) (stating that licensees shall "[p]romptly report" changes in the listed information "in writing"); 7 C.F.R. § 46.28(a) ("After all parties agree on the terms and the contract is effected, the broker shall prepare in writing and deliver promptly to all parties a properly executed confirmation or memorandum of sale[.]"); 7 C.F.R. § 46.29(a) ("Averaging or pooling of sales is not permissible unless the receiver obtains the specific written permission of the consignor prior to the accounting."); 7 C.F.R. § 46.31(d) ("When a shipper enters into a joint account transaction with growers or others, the agreement between the parties should be reduced to a written contract[.]"); 7 C.F.R. § 46.31(e) ("When a shipper enters into a joint account agreement with a terminal market dealer, the agreement should be reduced to writing[.]"); 7 C.F.R.

§ 46.32(a) ("Agreements between growers and agents should be reduced to a written contract[.]"); 7 C.F.R. § 46.45(a)(3)(ii) (noting, with respect to lots of commodities found to be misbranded, that "[w]hen a resale or consignment is finalized, *written* notice must be given that the lot is misbranded and must be corrected before resale") (emphasis in original); 7 C.F.R. § 46.46(f) ("Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction[.]"); 7 C.F.R. § 46.46(g)(1) ("Notice of intent to preserve benefits ... must be in writing[.]"); *cf.* 7 C.F.R. § 46.3(b) ("More than one trade name may be used by the same person only after such trade names have been approved in writing by the Director.").

The district court relied upon *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777 (8th Cir.1991) to support its conclusion. In *Hull Co.,* the Eighth Circuit found that oral agreements to extend the prompt payment requirements established by the Secretary's regulations "essentially violate PACA," *id.* at 781, and noted that "recognizing only written agreements to extend the time for payment beyond ten days best promotes the legislative scheme and the general purpose Congress has manifested." *Id.* at 782. However, the regulation at issue in *Hull Co.,* 7 C.F.R. § 46.46(f), contains an express writing requirement. *See id.* ("Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction[.]"). The Eighth Circuit's analysis, therefore, has limited impact in this case, which involves regulations that do not contain specific writing requirements.

writing requirement in sections 46.22 and 46.23 is significant.[13]

### 3.

Because the district court was of the view that sections 46.22 and 46.23 required written waivers in all cases, it did not evaluate whether, despite the presumption against oral waivers, there was sufficient evidence to hold that Lange orally consented to Gagliano's dumping and likewise agreed that a dumping certificate was not necessary. As we have noted above, at trial, Mr. Gagliano testified that Lange orally consented to the dumping and also orally agreed that no federal certificate was needed. Although Gagliano's testimony was not corroborated by a neutral third-party, it was unrebutted. *Cf. Jameson v. Valerio's Produce Co.*, 46 Agric. Dec. 653, 1985 WL 62906, at *2 (1985) (finding oral waiver of dumping requirements based on third-party testimony when parties disputed waiver's existence). There is other evidence that might corroborate Mr. Gagliano's testimony. Lange's acceptance of the check might suggest that it knew not all the lettuce could be sold. Gagliano's obtaining the three merchant affidavits might be considered as corroborative of Lange's request that it sell what it could, dump the rest, and obtain local certification. However, Lange's request for "local certification" suggests that any waiver it provided was limited; perhaps, Lange was willing to waive the need for a costly federal inspection but required that Gagliano have the lettuce inspected by a local official.

We cannot resolve these evidentiary issues. Accordingly, we shall remand the case so that the district court, making the appropriate credibility findings, may evaluate the evidence. We hold only that, although there is a presumption against oral waivers, 7 C.F.R. §§ 46.22 and 46.23 do not require written waivers in all cases. We stress that nothing in this opinion should be construed as reflecting a view on whether there is sufficient evidence for Gagliano to overcome the presumption against oral waivers. That is a matter for the district court to address on remand.

### Conclusion

For the foregoing reasons, the decision of the district court is reversed and remanded for additional proceedings.

REVERSED and REMANDED

---

**13.** *Cf. Brown v. Gardner,* —— U.S. ——, ——, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994) (discussing rule of statutory interpretation that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' ") (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)).