**HAVANA POTATOES OF NEW YORK CORPORATION and Havpo, Inc.,** Petitioners,

v.

**UNITED STATES of America, United States Department of Agriculture and United States Secretary of Agriculture,** Respondents.

**No. 604, Docket 97–4053.**

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1997.

Decided Dec. 19, 1997.

90

Tab K. Rosenfeld, Perlman Rosenfeld & Jacobs, New York City, for Petitioners.

Libbi J. Finelsen, Office of the General Counsel, United States Department of Agriculture, Washington, DC (James Michael Kelly, Associate General Counsel, Margaret M. Breinholt, Acting Assistant General Counsel), for Respondents.

Before: WINTER, Chief Judge, CARDAMONE, Circuit Judge, and POLLACK, District Judge.*

WINTER, Chief Judge:

Havana Potatoes of New York Corporation and Havpo, Inc., petition for review of an order of the Secretary of Agriculture revoking petitioners' licenses under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a–499t. The Secretary found that petitioners committed willful, flagrant, and repeated violations of Section 2(4) of PACA, 7 U.S.C. § 499b(4), by failing to make prompt payment for produce.

---

* The Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.

Petitioners argue that the Secretary's findings regarding failures to meet the prompt-payment requirement were not supported by substantial evidence and that the Secretary improperly failed to consider sanctions less harsh than revocation of petitioners' licenses. We disagree and deny the petition for review.

PACA requires covered entities, such as petitioners, to "make full payment promptly" for all purchases of perishable agricultural commodities received in interstate commerce. 7 U.S.C. § 499b(4). "Full payment promptly" has been defined as, *inter alia,* payment, "for produce purchased by a buyer, within 10 days after the day on which the produce is accepted," 7 C.F.R. § 46.2(aa)(5), unless the parties have agreed, in writing and before entering into the transaction, to different payment terms. 7 C.F.R. § 46.2(aa)(11).

The Administrative Law Judge ("ALJ") found that, from February 1993 through January 1994, Havana Potatoes "failed to make full payment promptly to 66 sellers of the agreed purchase prices for 345 lots of perishable agricultural commodities in the total amount of $1,960,958.74," *In re Havana Potatoes of New York Corp.,* 55 Agric. Dec. 1234, 1996 WL 678860, at *2 (U.S.D.A. Nov. 15, 1996), and that, during the same period, Havpo "failed to make full payment promptly to 6 sellers of the agreed purchase prices for 23 lots of perishable agricultural commodities in the total amount of $101,577.50." *Id.* at *3. The Judicial Officer ("JO") upheld the ALJ's decision, and the JO's Decision and Order constitutes the final order of the Secretary of Agriculture. *See* 7 C.F.R. § 2.35.

 We must uphold the Secretary's factual findings if they are supported by substantial evidence. *See, e.g., Kinney Drugs, Inc. v. NLRB,* 74 F.3d 1419, 1427 (2d Cir.1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In determining whether the Secretary's findings are supported by substantial evidence, we review the whole record, not just the evidence that supports the Secretary's conclusions. *See, e.g., Williams v.*

*Bowen,* 859 F.2d 255, 258 (2d Cir.1988). Nevertheless, we may not reweigh the evidence or substitute our judgment for that of the Secretary. *See, e.g., Valente v. Secretary of HHS,* 733 F.2d 1037, 1041 (2d Cir.1984). Even if we are inclined to draw different conclusions from those drawn by the Secretary, we will uphold the Secretary's decision so long as it is based on adequate findings sustained by evidence having "rational probative force." *Williams,* 859 F.2d at 258 (quoting *Consolidated Edison Co.,* 305 U.S. at 230, 59 S.Ct. at 217); *see also Kinney Drugs,* 74 F.3d at 1427.

The Secretary's findings in the instant matter easily meet this deferential standard. The JO relied principally on past-due invoices for unpaid deliveries found in petitioners' files and on the testimony of two investigators for the Department of Agriculture who reviewed petitioners' records and spoke with Pedro Perez, president of both Havana Potatoes and Havpo. The invoices reflected that, as of January 1994, Havana Potatoes owed over $1.9 million and Havpo owed over $100,000 to sellers of produce. One of the investigators testified that Perez admitted that the estimates of $1.9 million and $100,-000 of overdue debt to sellers "seemed reasonable."

It is agreed that petitioners ultimately paid the amounts listed in the invoices reviewed by the investigators, but another investigator testified that the debts were paid after the PACA-specified dates. That investigator also testified, and the ALJ found, that although the past-due amounts shown by the invoices had been paid by April 1995, Havana Potatoes had accumulated new overdue debts of approximately $1.2 million from March 1994 to April 1995 and Havpo had accumulated new debts of approximately $58,000 from August to November 1994. *See In re Havana Potatoes,* 1996 WL 678860, at *3.

Petitioners' principal argument is that the invoices were unreliable evidence of late payment because they were insufficient by themselves to prove that the goods listed on the invoices were actually delivered, that the dates listed on the invoices were dates of receipt (as opposed to, for example, dates of shipment), that petitioners had not made oth-

er payment arrangements under 7 C.F.R. § 46.2(aa)(11), or that petitioners had accepted the produce indicated on the invoices. The JO, noting that petitioners introduced no evidence showing that the invoices were inaccurate, rejected petitioners' arguments. *See In re Havana Potatoes,* 1996 WL 678860, at *14–16.

We see no error in the JO's findings based on the invoices, especially given the lack of any evidence showing that the invoices were inaccurate. *Cf. Veg–Mix, Inc. v. United States Dep't of Agric.,* 832 F.2d 601, 606 (D.C.Cir.1987) (reliance on invoices permissible in "absence of a serious, nonspeculative argument that [they] were something other than they appeared to be"); *United Fruit & Vegetable Co. v. Director of Fruit & Vegetable Div., United States Dep't of Agric.,* 668 F.2d 983, 984–85 (8th Cir.1982) (substantial evidence, consisting of petitioner's admission of debts, invoices from unpaid sellers, and testimony from agency investigators, supported Secretary's finding of PACA violation).

Because the record shows that petitioners ultimately paid for the produce reflected on the invoices, the evidence that the produce was actually received and accepted was overwhelming. We agree with petitioners that the dates on the invoices did not necessarily represent when the goods were received; they might have represented only shipment dates. However, PACA requires payment within 10 days after acceptance of the goods, *see* 7 C.F.R. § 46.2(aa)(5), and the vast majority of the unpaid invoices found by the investigators in January, 1994, had various dates throughout 1993. Given that the invoices involved perishable commodities and the time between shipment and receipt could not have been lengthy, PACA violations have been shown even if the invoices had dates of shipment. Moreover, the admissions of petitioners' president concerning both the reasonableness of estimates of overdue debts based on the invoices and his desire to pay off those debts over the next 12 to 18 months are themselves sufficient to uphold the ALJ's findings regarding those debts.

Finally, the lack of evidence undermining the conclusion that the dates on the invoices approximated dates of receipt and acceptance is not irrelevant. To be sure, the Secretary bears the burden of persuasion, but a trier does not have to ignore the lack of such evidence given the ease with which petitioners could have produced it, if it existed. For example, if petitioners had made arrangements with sellers for payments over extended periods of time, petitioners need only have directed the investigators to these contracts or have produced the contracts in the hearing before the ALJ. Petitioners introduced the testimony of one Robert Reich, the sales manager of one of petitioners' principal vendors, who claimed that his company had an agreement with petitioners that contained "flexible" repayment terms. Petitioners, however, never brought that alleged contract to the attention of the investigators, never produced the contract in the administrative hearing, and never even alleged that similar agreements with other sellers existed. Reich's testimony alone does not undermine the Secretary's finding that petitioners violated the prompt-payment provisions of PACA. *See* 7 C.F.R. § 46.2(aa)(11) (parties using different repayment terms must have copy of written agreement in their records, and party claiming existence of such an agreement has burden of proving it). Accordingly, we conclude that the Secretary's finding that petitioners violated PACA was supported by ample evidence.

■ Petitioners next argue that the Secretary's choice of sanction, revocation of petitioners' PACA licenses, was based in part on an erroneous policy regarding sanctions. Specifically, they contend that the Secretary failed to consider several mitigating circumstances.[1] *See Frank Tambone, Inc. v. Unit-*

---

1. It is not clear whether less drastic sanctions—short of no sanction—are as a practical matter available. PACA requires buyers of produce to hold receivables and proceeds from the sale of commodities "in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment of the sums owing...." 7 U.S.C. § 499e(c)(2). Were a buyer to be sanctioned, it could find financing difficult to obtain because lenders might anticipate being held to have had constructive or actual notice that any loan repayments were in violation of the buyer's obligations as a trustee for unpaid produce sellers. *See Consumers Produce Co. v. Volante*

ed States Dep't of Agric., 50 F.3d 52, 55 (D.C.Cir.1995) (noting that Secretary's policy prior to 1991 was that mitigating circumstances are irrelevant to choice of sanctions, but that, since 1991, mitigating circumstances are relevant). We may not overturn the Secretary's choice of sanction unless it is unwarranted in law or so unjustified in fact as to constitute an abuse of discretion. *See County Produce, Inc. v. United States Dep't of Agric.*, 103 F.3d 263, 265 (2d Cir.1997); *ABL Produce, Inc. v. United States Dep't of Agric.*, 25 F.3d 641, 645 (8th Cir.1994). We find no error here.

PACA allows the Secretary to revoke a violator's license if "the violation is flagrant or repeated." 7 U.S.C. § 499h(a). The Secretary found that petitioners committed willful, flagrant, and repeated violations of PACA over an extended period of time. The JO accepted the recommendation of Department of Agriculture officials, who advised that revocation was appropriate due to the number and seriousness of petitioners' PACA violations, the period over which such violations occurred, the dollar amount, the warning letter petitioners received in November 1991, and the effect of failures to make prompt payment on the produce industry as a whole. *See In re Havana Potatoes*, 1996 WL 678860, at *27–29. Petitioners argue that the JO misapplied the policy announced in *re S.S. Farms Linn County, Inc.*, 50 Agric. Dec. 476 (1991). There, the Secretary announced that

> the sanction in each case will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all relevant circumstances, always giving appropriate weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose.

50 Agric. Dec. at 497. Petitioners contend that the JO failed to consider as relevant circumstances the financial condition of the produce industry, the petitioners' relatively

strong payment history, the "devastating effect that the elimination of such [ ] large dealer[s] would have on the smaller firms," Petitioners' Brief at 36, and the fact that petitioners had, by the time of the ALJ's decision, made "great progress ... towards returning to a timely paying status."[2] *Id.* at 35. The JO determined that such factors should not be considered in determining the sanction and further found that petitioners' purported mitigating circumstances were not supported by the record. *In re Havana Potatoes*, 1996 WL 678860, at *29.

The JO relied in large part on *In re Andershock Fruitland, Inc.*, 55 Agric. Dec. 1204, 1996 WL 532852 (U.S.D.A. Sept. 12, 1996), *appeal docketed*, No. 96–4238 (7th Cir. Dec. 30, 1996), where the Secretary further discussed the policy regarding sanctions:

> The sanction policy in *In re S.S. Farms Linn County, Inc.* ... does not alter the doctrine ... that, because of the peculiar nature of the perishable agricultural commodities industry, and the articulated congressional purpose that only financially responsible persons should be engaged in the perishable agricultural commodities industry, excuses for nonpayment in a particular case are not sufficient to prevent a license revocation where there have been flagrant or repeated failures to pay a substantial amount of money over an extended period of time.

1996 WL 532852, at *1. *Andershock Fruitland* determined that previous compliance with PACA, good-faith efforts to pay suppliers, excuses for nonpayment, and collateral effects of revocation are not relevant to the question of whether revocation is warranted. Rather, the relevant factors are whether the violations entail flagrant or repeated failures to pay more than a de minimis amount, whether the company had paid all sellers by the opening of the administrative hearing, and whether the company is in compliance with PACA. *Id.* The JO in the instant matter followed *Andershock Fruitland. In re Havana Potatoes*, 1996 WL 678860, at *29.

---

*Wholesale Produce, Inc.*, 16 F.3d 1374, 1381–82 (3d Cir.1994); *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1315–16 (11th Cir. 1992).

**2.** At oral argument, counsel for petitioners added a claim that PACA's payment requirements are obsolete in modern produce markets.

We agree in substantial and sufficient measure with the JO. To be sure, isolated failures to pay within ten days or even substantial delays in payments fully cured after a temporary period of financial difficulty might justify mitigation. However, PACA simply cannot be read to allow the continued licensing of a produce buyer in the face of its persistent failures to comply with the statute's terms because of the produce buyer's long-standing financial difficulties. Persistent violations indicate willfulness in the sense that a persistent violator must know when placing orders for produce that some or all will not be paid for in a timely fashion under PACA. Moreover, financial difficulties are likely to be the cause of PACA prompt-payment violations in virtually all cases, and the statute would have little meaning if the administrative sanction of license revocation were never used where a buyer persistently violates PACA because of an ongoing lack of funds.

Nor is the fact—if indeed fact—that small produce sellers may be injured by the demise of large buyers like petitioners to be considered as relevant to mitigation under PACA. Congress has determined that the balance of rights, obligations, and duties struck by PACA is the proper one, and we are bound by that determination. For the same reason, we cannot entertain petitioners' assertion that an industry-wide crisis has caused rampant late payment—and that other buyers are in more serious noncompliance with PACA than are petitioners—or their related claim made at oral argument, *see supra* Note 2, that PACA's scheme is not consistent with current realities in the market for produce. If PACA's payment requirements are too harsh or even counterproductive, Congress is the body that must make that judgment.

At the time of the administrative hearing—May 1995—petitioners had paid the $2 million in overdue debts to sellers described above but had accumulated over $1.2 million in new overdue debts. The JO concluded, therefore, that revocation of petitioners' licenses was warranted. *In re Havana Potatoes*, 1996 WL 678860, at *30. In our view, the JO's conclusion did not constitute an abuse of discretion. Although petitioners did reduce the amount of their overdue debts by the time of the administrative hearing, a pattern of PACA violations extending over two years continued, albeit in lesser—but nevertheless substantial—amounts.

We have considered petitioners' remaining contentions and have found them to be without merit. We therefore deny the petition for review.