**ABL PRODUCE, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 93–3044.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1994.

Decided May 25, 1994.

---

Patricia J. Rynn, Newport Beach, CA, argued (Lois Rubin, on the brief), for petitioner.

Raymond W. Fullerton, Washington, DC, argued (James Michael Kelly and Jeffrey A. Knishkowy, on the brief), for respondent.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

ABL Produce, Inc. ("ABL") petitions for review of the Secretary of Agriculture's determination that it violated the employment restrictions contained in the Perishable Agricultural Commodities Act ("PACA"). It also seeks review of the Secretary's decision to revoke ABL's license as punishment for this violation. We uphold the Secretary's determination that ABL violated PACA, but modify the penalty imposed for the violation.

## I. BACKGROUND

In May, 1990, the Department of Agriculture (referred to variably as "the Secretary" or "the Department") commenced disciplinary proceedings against Lombardo's Fruit & Produce Company ("Lombardo Fruit") for its repeated violations of PACA. Anthony Lombardo, Sr., ("Lombardo"), who was "responsibly connected" to Lombardo Fruit, faced the prospect of being unemployable by other PACA licensees in the event Lombardo Fruit was found to have engaged in flagrant or repeated violations of PACA. See 7 U.S.C. § 499h(b) (1988).

In October or November of 1990, while the disciplinary proceeding against Lombardo Fruit was still pending, Lombardo presented a business proposal to Orville Middendorf, who was President and majority shareholder of Middendorf Meat Company, Middendorf Quality Foods, and a fish company (whose name does not appear in the record). Middendorf Quality Foods, which sold frozen produce, was a PACA licensee.

Lombardo's idea was for Middendorf to expand his operations by starting a fresh produce company and a truck leasing company. The fresh produce company would complement Middendorf's other businesses, and the truck company would transport the merchandise to Middendorf's customers at a lower cost than Middendorf was currently incurring. Lombardo informed Middendorf about his impending suspension, but said that he could help start the produce company's operation until the suspension was actually imposed. Once the suspension was imposed, Lombardo was to work solely for and on behalf of the trucking company.

Middendorf adopted Lombardo's suggestions, and two corporations were formed. ABL Produce, Inc. ("ABL"), was the produce company, and as such was a PACA licensee. The trucking company was called ACME Leasing Company ("ACME"). Middendorf was ABL's president and sole shareholder. Lombardo was neither an officer nor a director of either corporation.

In March of 1991, the proceedings against Lombardo Fruit concluded with the Secretary's finding that the company had committed repeated and flagrant violations of PACA. The Secretary then issued an order suspending Lombardo; the suspension was to begin on May 6, 1991. On June 26, the Department wrote to ABL, expressed its understanding that Lombardo was employed by ABL, explained that the concept of employment included "any affiliation of any person with the business operations of a licensee," and indicated that Lombardo's employment must cease within thirty days of receipt of the letter. Middendorf discussed the letter with Lombardo, who promised to refrain from any involvement in ABL's activities and

to concentrate solely on ACME's operations. Middendorf then responded to the Department, indicating that Lombardo was no longer employed by ABL but rather was employed by ACME, and that Lombardo had ceased all involvement in ABL's operations. Middendorf's response also stated that he "trust[ed] that no adverse action will be taken against ABL without ... being notified in advance and given an opportunity to respond" and requested to be informed if this understanding was incorrect. The Department replied on October 8, 1991, acknowledging receipt of Middendorf's letter and informing him that "in the future, if Anthony G. Lombardo is found to be affiliated with or employed by your firm, with or without compensation, an administrative action may be taken to suspend or revoke your firm's license."

That same month, the Department received reports that Lombardo was still working for ABL, and initiated an investigation. Middendorf cooperated with the investigators. Near the conclusion of the investigation Middendorf asked Bruce Summers, one of the investigators, if there appeared to be any problems. Summers indicated that there were some "gray areas" in light of the close proximity of ABL's and ACME's business premises and the close business relationship between the two companies. Middendorf then asked the investigator to let him know if the investigation revealed that ABL was not complying with PACA's requirements. However, instead of reporting to Middendorf, in January 1992 the Department filed a complaint alleging that Lombardo continued to work for ABL after his suspension commenced. Middendorf referred the complaint to his attorney, Robert Guest, with instructions to look into the matter. At approximately the same time Middendorf received the complaint, one of ABL's salespeople threatened to resign because Lombardo was seeing her customers. Armed with this information, Guest contacted some of ABL's customers, some of whom indicated that they had, on occasion, placed orders through Lombardo.[1] After Guest reported the results of his investigation, Middendorf demanded (and received) Lombardo's resignation.

---

1. Guest's investigation also uncovered several other improprieties committed by Lombardo. As these acts were not relevant to the Department's complaint, we shall not detail them.

ABL requested a hearing on the complaint, which was held before an Administrative Law Judge ("ALJ") in September 1992. After hearing testimony from, among others, Lombardo, Middendorf, Guest, and some of ABL's customers, the ALJ found that Lombardo continued business contacts with ABL's produce suppliers and customers after his suspension was to have started. The ALJ further concluded that the violation was neither intentional nor flagrant. Consequently, the ALJ rejected the Secretary's suggestion that ABL's license be revoked and instead suspended ABL's license for thirty days.

Both ABL and the Secretary appealed to the Department's Judicial Officer ("JO").[2] The JO upheld the ALJ's determination that ABL violated PACA by allowing Lombardo to transact business on its behalf, but ordered that ABL's license be revoked. ABL now appeals to this court.

## II. DISCUSSION

### A. Violation

ABL does not quarrel with the JO's factual findings regarding Lombardo's actions. Instead, it presents a series of arguments contending that ABL should not be punished for Lombardo's actions. We reject these arguments.

### 1. Lombardo's Acts Were Unauthorized

■ PACA provides that "no licensee shall employ any person ... who is or has been responsibly connected with any person whose license has been revoked or is currently suspended by order of the Secretary." 7 U.S.C. § 499h(b)(1) (1988). There is no doubt that Lombardo was responsibly connected with Lombardo Fruit and thus could not be employed by another PACA licensee. The question is whether ABL employed him within the meaning of PACA.

"The terms 'employ' and 'employment' mean any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment." *Id.* § 499a(10). The

definition makes clear that the analysis is to focus on whether there was a relationship between Lombardo and ABL's business operations, and not necessarily whether there was an agency relationship between Lombardo and ABL. *Cf. Tri–County Wholesale Produce Co. v. Department of Agriculture,* 822 F.2d 162, 165 (D.C.Cir.1987) (per curiam) ("the term 'employment' is to be given a broad reading, indeed to include 'any affiliation.' "). With this understanding in mind, it is clear that Lombardo became affiliated with ABL's business operations when he contacted customers and suppliers and bought and sold produce, all on ABL's behalf. Thus, he was employed within the meaning of PACA, and the fact that he was so employed while he was suspended constitutes a violation of § 499h(b).

■ ABL contends that it should not be held responsible for Lombardo's actions because Lombardo acted without authorization, and because Middendorf did not know about Lombardo's failure to obey orders to cease conducting business on ABL's behalf. In other words, Middendorf was an innocent, unknowing party to Lombardo's unauthorized actions. However correct this characterization may be, ABL's argument fails because Middendorf is not the party charged with violating PACA; ABL is. It is true that, as a corporation, ABL can act only through its agents. However, ABL does not act only through Middendorf. Accordingly, ABL cannot claim to be innocent and unaware of Lombardo's actions because, at a minimum, it (through its agents) knew or should have known that Lombardo was conducting business dealings on its behalf with both suppliers and customers. The very fact that ABL (through its agents) participated in the business transactions arranged by Lombardo, and reaped the benefits from those transactions, belies any claim that ABL did not affiliate itself with Lombardo in violation of PACA.

### 2. Inadequate Notice/Estoppel

ABL contends that the Department failed to give the notice required by the Adminis-

2. The Secretary has delegated final authority to the Judicial Officer to decide these cases. *See* 7 C.F.R. § 2.35 (1993).

trative Procedure Act ("APA"). In a related argument, ABL contends that the Department should be estopped from taking action against ABL's license because Middendorf was misled into believing ABL was not violating PACA. We reject both arguments.

■ First, as to the notice required by the APA, we begin by examining 5 U.S.C. § 558(c) (1988), which states in pertinent part that

the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements.

ABL contends that the Department's letter of October 8 failed to provide the requisite notice because it did not clearly state that Lombardo's involvement in ACME would be considered employment within the meaning of PACA. Although ABL's point is well-taken, it misses the mark because the violation was not premised on Lombardo's activities with regard to ACME;[3] as explained above, it is predicated on Lombardo's involvement in ABL's business activities. Accordingly, the Department's June 26 letter, which warned that an administrative action could be filed if Lombardo was found to be affiliated with ABL's operations, satisfied the APA's notice requirement.

■ ABL's estoppel argument is premised upon Bruce Summers' failure to indicate that Lombardo's involvement in ACME constituted a violation of PACA's employment restric-

tion and his subsequent failure to provide Middendorf with any kind of a report on his findings. We reject this argument because it rests, like the argument regarding notice, on the mistaken premise that Lombardo's involvement in ACME is the basis for the violation. To the extent that ABL is contending that Summers was obligated to inform Middendorf about his findings with respect to Lombardo's involvement in ABL's business activities, its argument is clearly flawed. ABL, through Middendorf, had been warned to sever all affiliation with Lombardo. Subsequent investigation by Summers revealed that this warning had not been heeded. Consequently, there was a violation of PACA, and Summers was not obligated by law to inform Middendorf of his findings.[4]

**B. Sanction**

■ Once it has been determined that a licensee has violated PACA's employment restriction, the Secretary may elect to either suspend or revoke the license. 7 U.S.C. § 499h(b) (1988). Because Congress has entrusted the Secretary to enforce PACA, we must be deferential to its permissible decisions, *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973); however, our prior decisions make clear that we are still obligated to consider whether the sanction is "so without justification in fact as to constitute an abuse of the Secretary's discretion." *Ferguson v. Department of Agriculture*, 911 F.2d 1273, 1278 (8th Cir.1990) (quotations omitted). Whether a remedy is appropriate "will depend on 'the pertinent statute and relevant facts.' " *Id.* at 1277–78 (quoting *Butz*, 411 U.S. at 189, 93 S.Ct. at 1459).

■ In his order, the JO rejected the ALJ's sanction of a 30–day suspension. In

---

**3.** The Judicial Officer acknowledged that he did not need to decide whether Lombardo's involvement in ACME violated PACA's employment restrictions, but proceeded to conclude that it did. We construe the Judicial Officer's observation that the issue did need not be reached as meaning that the violation is not predicated on this fact. Accordingly, we decline to address the issue further.

**4.** ABL reiterates that Middendorf did not know of Lombardo's involvement in ABL's activities, and could not have known because he did not

have daily contact with ABL. We again note that it is ABL, not Middendorf, that has been charged with violating PACA. Even if Middendorf had been charged, he cannot excuse the violation by purposely avoiding knowledge. He had been warned as to the nature of the proscribed conduct, and had been warned of the consequences of non-compliance. The violation cannot be excused simply because Middendorf ordered Lombardo to disassociate himself from ABL and then refrained from insuring that Lombardo complied with his order.

so doing, he quoted a prior decision indicating

> "that reliance will no longer be placed on the "severe" sanction policy set forth in many prior decisions.... Rather, the sanction in each case will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all relevant circumstances, always giving appropriate weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose."

JO's decision at 27 (quoting *In re S.S. Farms Linn Country, Inc.*, 50 Agric.Dec. 476, 497, 1991 WL 290584 (1991), *aff'd*, 991 F.2d 803 (9th Cir.1993) (Table)). The JO then concluded that revocation was an appropriate remedy for the reasons testified to by the Department's "sanction witness"; namely, that Lombardo was responsibly connected to a produce company (Lombardo Produce) that failed to pay over a million dollars to produce suppliers, ABL had been notified not to employ Lombardo, and the "violations were repeated and flagrant." *Id.* at 26–27. Though we are mindful that PACA is designed to protect small farmers from the risk of not receiving payments from their purchasers, *In re Lombardo Fruit & Produce Co.*, 12 F.3d 110, 112 (8th Cir.1993), the Secretary's conclusions are not supported by substantial evidence on the record and his decision to revoke ABL's license clearly ignored several "relevant circumstances" revealed in the record.

 Initially, we are troubled by the Secretary's determination that ABL's violations were repeated and flagrant. In making this finding, the JO relied exclusively on the sanction witnesses' testimony. The sanction witness opined that the violations were repeated and flagrant because the affiliation continued after the Department notified ABL not to employ Lombardo and because the employment continued until Lombardo was terminated in March 1992. The first factor cannot be determinative because, as discussed earlier, the APA requires all licensees to receive notice before a license is revoked. The fact that ABL received the notice required by law does not mean that the violation was flagrant or repeated. As to the second factor, it is misleading to assert that the violation was repeated simply because Lombardo was not terminated until March of 1992. This might have some bearing if Lombardo had daily involvement in ABL's activities, but this is not the case. Several of ABL's customers testified that they conducted business dealings through Lombardo, but also clearly indicated that they did not always do so; in fact, the impression left by these witnesses is that they usually dealt with people other than Lombardo. The record also demonstrates that most of Lombardo's activities involved ACME, which involvement is not the basis for this action. *See* footnote 3, *supra*. Though it is true that Lombardo did not leave Middendorf's employ until March of 1992, this does not accurately portray the degree of Lombardo's involvement in ABL's business activities.

It is clear from the record that ABL tried, albeit unsuccessfully, to prevent Lombardo from involving himself in the company's activities. Though there is no denying that the violation calls for a punishment, consideration of the "relevant circumstances" should include consideration of the statute's purpose. Here, none of ABL's bills went unpaid, so nobody has suffered the harm PACA was primarily designed to prevent. We also note that the brunt of the sanction, if upheld, will be most keenly felt by Middendorf personally; as a person "responsibly connected" to ABL, Middendorf will be required to disassociate himself from his other PACA-licensed company. *See* 7 U.S.C. § 499h(b) (1988); *cf. Ferguson*, 911 F.2d at 1282 ("Our conclusion is not based upon but is strengthened by the fact that the six-month suspension would likely put Ferguson out of business."). This is particularly important in light of the most compelling and unique circumstance contained in the record: the fact that Lombardo engaged in deceptive acts to hide his activities from Middendorf and issued threats to prevent those who discovered his involvement from reporting to Middendorf. It should also be considered (although it apparently was not considered in the administrative proceeding) that until this episode, neither Middendorf nor his companies have committed violations of PACA or any other statutory scheme administered by the

Secretary. We thus conclude, after examining all the relevant circumstances, that the Secretary's decision to revoke ABL's license cannot be countenanced. We believe the ALJ's original sanction of a thirty day suspension is more appropriate, and reduce the sanction accordingly.

On appeal, the Secretary suggests additional bases in support of the revocation order, none of which are persuasive. The Secretary first points to Lombardo's involvement in starting ABL's operations, which was approved of and known by Middendorf. However, Lombardo was not suspended at that point in time, so his involvement in getting ABL off the ground was not improper and cannot be a factor in determining the appropriate punishment in this case. The Secretary also suggests that the arrangement between ABL and ACME was a sham, designed solely to give Lombardo a safe, non-PACA-licensed business entity from which he could secretly operate ABL. The record is completely devoid of any evidence in support of this characterization; to the contrary, the record demonstrates that ACME and ABL were separate companies, one being a produce company and the other being a trucking company.

Lest the reader believe that a thirty-day suspension is only a slight punishment, we note that the record reveals that such a suspension may cause ABL to go out of business. Even if the suspension does not cause ABL to permanently cease operations, it will certainly have a dramatic effect on its profitability, as the company would lose customers. Given the nature of the violation and the other factors we have identified, a thirty-day suspension is a sufficient sanction.

### III. CONCLUSION

We conclude ABL violated PACA's employment restriction by allowing Lombardo to be affiliated with its business activities. We also conclude that the Secretary provided ABL the notice and opportunity to comply required by the APA. However, after considering all the relevant circumstances presented in this case, substantial evidence does not support the Secretary's decision to revoke ABL's license, and we instruct that the sanction be reduced to a thirty-day suspension.