No. 95-1735

| | | |
|---|---|---|
| John J. Conforti, doing business as C & C Produce, | * * * | |
| Petitioner, | * * | |
| v. | * * | Appeal from the United States Department of Agriculture. |
| United States of America, | * * * | |
| Respondent. | * * | |

Submitted: September 11, 1995

Filed: January 18, 1996

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

John Conforti appeals the Secretary of Agriculture's decision sanctioning him for violating the employment restrictions in the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499h(b) (1980) ("PACA").  We uphold the Secretary's determination that Conforti violated PACA, but modify the penalty that the Secretary imposed.

**I.**

PACA was enacted to protect produce growers "from the 'sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.'"  In re Lombardo Fruit & Produce Co., 12 F.3d 110, 112 (8th Cir. 1993) (quoting Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir. 1991).  PACA requires wholesale produce dealers to obtain a license from the United

States Department of Agriculture ("USDA"), 7 U.S.C. § 499c(a), and prohibits licensees from employing individuals "responsibly connected" to a company that has failed to satisfy USDA reparation orders. Id. § 499h(b)(3). Under the statute, a person is responsibly connected to a company if he serves as a partner, officer, or director of it, or if he holds more than 10 percent of its outstanding stock. Id. §§ 499a(9).

Conforti operates C&C Produce, a licensed produce dealership. In June, 1993, Conforti hired Joseph Cali, his life-long friend, to work for C&C Produce. On June 24, 1993, Conforti received a letter from the USDA informing him that Cali was responsibly connected to Royal Fruit, a company with several outstanding reparation orders. The letter indicated that Conforti could not employ Cali after July 24, 1993, unless he posted a bond that was later set at $100,000.

Conforti then tried to obtain a bond. He first asked his insurance company for one, but it required full collateralization. He next applied for a line of credit at United Missouri Bank ("UMB") to collateralize the bond, but learned that approval would take three months. Conforti then decided to post $100,000 of his own funds to guarantee the line of credit. UMB initially approved the transaction, but changed its mind after the USDA advised the loan officer that Conforti's license was going to be revoked. In November, Conforti secured a line of credit at a different bank, but when he learned that the insurance company charged an additional $15,000 fee to issue the bond, he "threw up his hands" and abandoned his efforts.

Conforti did not fire Cali on July 24 as instructed; he did not finally fire him until November 19, 1993, after he gave up his search for a bond. In the interim, the USDA warned Conforti at

least five times that Cali's continued employment could result in the suspension or revocation of his PACA license.

Three months after he fired Cali, the USDA filed a complaint seeking to revoke Conforti's PACA license. The Administrative Law Judge ("ALJ") found that Conforti had violated PACA and suspended his license for thirty days. The USDA appealed to the Judicial Officer ("JO"), who affirmed the ALJ's decision that Conforti violated PACA but increased the suspension to 90 days. The JO's decision is the final decision of the Secretary of Agriculture. 7 C.F.R. § 2.35 (1993). Conforti petitioned this court to review the Secretary's order pursuant to 28 U.S.C. § 2342.

## II.

Conforti first argues that the JO improperly found that Cali was responsibly connected to Royal Fruit. He contends first that the finding cannot stand in the absence of a predicate finding in a special hearing on the question of Cali's connection to Royal Fruit. We disagree. It is true that USDA regulations establish a procedure to challenge the USDA's "responsibly connected" designation. 7 C.F.R. §§ 47.48-47.63 (1993). This proceeding, however, commences after the USDA finds that a person is responsibly connected, id. § 47.49(a), and nothing in the statute indicates that PACA's employment restrictions take effect only after this proceeding is completed. The statute straightforwardly prohibits employing anyone who is a responsibly connected person as defined by PACA. 7 U.S.C. § 499h(b). Thus, if the record contains evidence that Cali was a partner, director, or officer in Royal Fruit, or held more than 10 percent of Royal Fruit's stock, his employment is restricted and Conforti violated PACA by employing him. Id. § 499a(9).

Conforti also maintains that even if a previous hearing under 7 C.F.R. §§ 47.48-47.63 was not required, the record lacks evidence

-3-

indicating that Cali met PACA's definition of a responsibly connected individual.  This argument is without merit.  Prior to issuing his final order, the JO took official notice of an ALJ's opinion in In re Midland Banana and Tomato Co., PACA Docket No. D-93-548, and In re Royal Fruit, PACA Docket No. D-93-549 (USDA 1994) ("Royal Fruit").  In Royal Fruit, the ALJ found that Cali was the President and a director of Royal Fruit and that he held 50 percent of the company's stock.  Given these previous findings, we believe that the JO was justified in concluding that Cali was responsibly connected.

Conforti contends that the JO was not entitled to consider these previous findings because he improperly used the device of official notice.  We find no error in the JO's procedure.  USDA regulations allow the JO to take official notice of "such matters as are judicially noticed by the courts of the United States," 7 C.F.R.§ 1.141(g)(6) (1993), and the USDA Rules of Practice permit the JO to consider "any matter of which official notice is taken." 7 C.F.R. 1.145(i) (1993).  We have held that "federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue."  Hart v. Comm'r, 730 F.2d 1206, 1207 n.4 (8th Cir. 1984); see also United States v. Jackson, 640 F.2d 614, 617 (1981).  The JO also gave Conforti the required opportunity to object to the order taking official notice. 5 U.S.C. § 556(e).

Alternatively, Conforti contends that Cali is not responsibly connected because he played only a minor role in Royal Fruit. Conforti points to the ALJ's findings in Royal Fruit that Cali was by-and-large a "front man" and that Royal Fruit was actually the "alter ego" of Robert Heimann.  Conforti argues that, under the doctrine adopted in Quinn v. Butz, 510 F.2d 743, 756 (D.C. Cir. 1975), Cali's nominal status in Royal Fruit merely raises a rebuttable presumption that he is responsibly connected.

-4-

The central difficulty that Conforti's argument encounters is that we specifically rejected it ten years ago. See Pupillo v. United States, 755 F.2d 638, 643 (8th Cir. 1985). We apply a per se rule: "Section 499a(9) [is] an irrebuttable statement that an officer, director, or holder of more than ten percent of the outstanding stock of a corporation is responsibly connected with that corporation or association." Id. Cali's actual responsibilities or interests in Royal Fruit are, therefore, irrelevant to the question of whether he was responsibly connected; because he was both an officer in the company and held 33 percent of its stock, he was responsibly connected as a matter of law.

Because we find that the JO's decision that Cali was a responsibly connected person is supported by substantial evidence, we affirm it. Pupillo, 755 F.2d at 643.

### III.

Conforti also asserts that he did not violate PACA because he made a good faith effort to obtain a bond and because the USDA led him to believe that he could continue to employ Cali while he was searching for a bond. We see how Conforti could have gotten this impression from his communications with the USDA. Although the USDA initially told Conforti to obtain a bond or fire Cali by July 24, the USDA did not set the bond amount until July 16, leaving very little time before the deadline. Conforti then asked the USDA to reduce the bond; the USDA denied his request on August 9. The August 9 letter reiterated that Conforti needed either to obtain a bond or fire Cali, but it did not mention the July 24 deadline. On July 30, the USDA sent a letter asking Conforti whether he intended to fire Cali or to obtain a bond. Finally in November, after Conforti stopped looking for a bond, M.A. Clancy, the PACA Licensing Program Review Head, advised him that if he could not post a bond, he should fire Cali.

-5-

Conforti does not cite any authority to support his official estoppel argument, and we know of none. In point of fact, the Supreme Court has repeatedly indicated that an estoppel will rarely work against the government. See, e.g., Office of Personnel Management v. Richmond, 496 U.S. 414, 423 (1990). As the Court has noted, "When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interests of the citizenry as a whole in obedience to the rule of law is undermined." Heckler v. Community Health Services, 467 U.S. 51, 61 (1984). Therefore, in the absence of "affirmative misconduct" by the government, INS v. Hibi, 414 U.S. 5, 8 (1973), "not even the temptations of a hard case" like Conforti's justify applying an estoppel against the USDA. Federal Crop Ins. Co. v. Merrill, 332 U.S. 380, 386 (1947).

We strictly construe PACA's employment restriction, see Hull Co. v. Hauser's Foods, 924 F.2d 777, 782 (8th Cir. 1991); Pupillo, 755 F.2d at 643, and, as the D.C. Circuit has noted, the "employment bar is phrased as an absolute." Siegel v. Lyng, 851 F.2d 412, 415 (D.C. Cir. 1988); 7 U.S.C. § 499h(b) ("The Secretary may . . . suspend or revoke the license of any licensee who, after the date given in such notice, continues to employ any person in violation of this section."). Therefore, Conforti's good faith efforts, however sincere, cannot excuse his failure to fire Cali.

**IV.**

After the Secretary determines that a licensee violated PACA's employment restrictions, he may suspend or revoke the license. 7 U.S.C. § 499h. Conforti argues that suspending his license for 90 days was unduly harsh. We review the Secretary's sanction for an abuse of discretion, affirming it unless it is "without justification in fact." ABL Produce v. U.S.D.A., 25 F.3d 641, 645 (8th Cir. 1994). Even under this deferential standard, we agree

that a 90-day suspension was not justified by the facts. We therefore reverse the JO's sanction and reinstate the ALJ's 30-day license suspension.

In ABL Produce, 25 F.3d at 645, a license-holder challenged an order revoking his license for violating PACA's employment restrictions. We reversed the sanction and reinstated the 30-day suspension awarded by the ALJ because the JO failed to consider several "relevant factors," namely, whether the company's conduct threatens to undermine PACA's purposes, the circumstances of the violation, and the effect the sanction will have on the company. Id. at 646. We apply these considerations to the case at hand.

**A.**

The JO found that by employing Cali, Conforti threatened to undermine PACA's purposes. As we have already noted, PACA was designed to protect produce growers from "sharp" and "unscrupulous" practices of financially irresponsible brokers. In re Lombardo Fruit & Produce Co., 12 F.3d at 112. Congress was particularly concerned about the risk of non-payment. ABL Produce, 25 F.3d at 646.

The record in this case is devoid of evidence that Conforti is in any way a threat to produce growers. C&C Produce is financially healthy, and Conforti's suppliers themselves characterized his payment practices and ethics as "exemplary." The JO disregarded this information, however, concluding that "Mr. Conforti's ethics, payment practices, complaints against C&C produce and the financial health of Mr. Conforti's company are irrelevant." Given the fact that PACA was intended to protect suppliers, we do not see how this kind of information can be characterized as irrelevant. The JO therefore erred when he refused to consider it.

The JO further found that employing Cali threatened the industry because he was responsibly connected to Royal Fruit. As we have already said, however, Cali was simply a "front-man" who lacked both authority and an actual interest in Royal Fruit. The ALJ considered Cali's "front man" status and concluded that "to say that Mr. Cali was a great risk to the industry is hyperbole." The JO, on the other hand, disregarded Cali's limited involvement because it "did not lessen the responsibility of Mr. Cali for Royal's PACA violations."

We agree entirely, as we said above, that the extent of Cali's participation has no bearing on whether he is responsibly connected to Royal Fruit. Pupillo, 755 F.2d at 643. We believe, however, that his actual position at Royal Fruit is relevant to whether Cali's employment at C&C Produce threatened the produce industry. By disregarding the fact that Cali's role in Royal Fruit was de minimis, therefore, the JO overstated the threat that Cali's employment posed to the produce industry.

**B.**

The JO also increased the ALJ's sanction because Conforti "deliberately chose not to heed [the government's] warning" to fire Cali or obtain a bond. We agree that Conforti should be punished for employing Cali for four months after the USDA's deadline. We find, however, that the JO abused his discretion by not considering the mitigating circumstances in the case.

As the ALJ noted, Conforti "made a diligent and good faith effort to comply with the complainant's demands that he obtain a bond." During the period that Conforti employed Cali, he tried to obtain a bond from several different sources, and he consistently updated the USDA about his progress. While, as we have said, we do not agree with Conforti that his diligence absolves him of guilt in the matter, we do think that, particularly in light of the mixed

-8-

signals sent by the USDA, all of which we rehearsed above, the JO erred by completely discounting his efforts.

## C.

Finally, we think that the JO abused his discretion when he failed to consider how the 90-day suspension would affect C&C Produce. Conforti operates a wholesale produce dealership. Because his customers, primarily restaurants, require daily service, even a 30-day suspension is likely to have devastating financial consequences. ABL Produce, 25 F.3d at 647; see also Capital Produce Co. v. U.S., 930 F.2d 1077, 1081 (5th Cir. 1991) ("The 45-day suspension may destroy or seriously hamper [the produce company's] relationships with its customers, who depend upon daily services"). We think that there is every chance that suspending his license for 90 days will drive Conforti, a man with a previously spotless record, out of the produce business altogether.

## V.

For the reasons adduced, we affirm the decision of the Secretary of Agriculture finding that Conforti violated PACA's employment restrictions. We find, however, that the facts in the case do not justify the sanction imposed. In light of Conforti's exemplary record, his diligent efforts to obtain a bond, and Cali's limited participation in Royal Fruit, we reverse the JO's sanction and reinstate the ALJ's decision suspending Conforti's PACA license for 30 days.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-