**COUNTY PRODUCE, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 119, Docket 96–4027.**

United States Court of Appeals, Second Circuit.

On Submission Sept. 13, 1996.

Decided Jan. 10, 1997.

Harold James Pickerstein, Bonnie L. Amendola, Trager and Trager, P.C., Fairfield, CT, of counsel, for Petitioner.

M. Bradley Flynn, Attorney, Office of the General Counsel, U.S. Department of Agriculture, James Michael Kelly, Associate General Counsel, Margaret M. Breinholt, Acting Assistant General Counsel, Office of the General Counsel, U.S. Department of Agriculture, Washington, DC, of counsel, for Respondent.

Before: MINER and PARKER, Circuit Judges, and RESTANI, Judge.*

PARKER, Circuit Judge:

Petitioner County Produce, Inc. ("County Produce") petitioned for review of the final order of the Secretary of Agriculture, which upheld the Administrative Law Judge's Initial Decision and Order revoking County Produce's license under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a–499s. The issue is whether the Secretary's decision to uphold the revocation of County Produce's license was supported by substantial evidence. We deny the petition for review and affirm the Secretary's order.

## I. BACKGROUND

### A. *PACA*

Congress enacted PACA for the purpose of ensuring that produce growers and ship-

* The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

pers receive payment for their perishable goods. To this end, PACA requires produce merchants, dealers, and brokers to obtain a license from the United States Department of Agriculture ("USDA"), and it provides penalties for PACA violations. *See George Steinberg & Son, Inc. v. Butz,* 491 F.2d 988, 990 (2d Cir.1974). Section 8(b) of PACA provides, in relevant part:

> Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—
>
> (1) whose license has been revoked or is currently suspended by order of the Secretary;
>
> (2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title....

7 U.S.C. § 499h(b). Pursuant to section 8(b), "[t]he Secretary may, after thirty days' notice and an opportunity for a hearing, suspend or revoke the license of any licensee who, after the date given in such notice, continues to employ any person in violation of this section." *Id.* Congress felt that by barring "responsibly connected" individuals from employment with other licensed produce companies, those individuals would be prevented from causing further harm within the produce industry. *See Zwick v. Freeman,* 373 F.2d 110, 118 (2d Cir.1967).

The term "employment" is defined by PACA as "any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment." 7 U.S.C. § 499a(b)(10). The USDA has defined the term "any affiliation" to include "all kinds of affiliation—whether minimum or maximum; whether deliberate or not." *In re Tri–County Wholesale Produce Co.,* 45 Agric.Dec. 286, 304 (1986).

## B. *Facts*

County Produce, a produce dealer licensed under PACA, was formed by David Nyden in June 1992. Nyden owns eighty percent of County Produce and serves as its president.

Several years earlier, in 1988, Nyden made an offer to Linda Wright to work for him at a produce company called L. Bernstein and Sons ("L. Bernstein"). Wright accepted this offer. In 1989, Nyden sold his fifty-percent interest in L. Bernstein to Arthur Stollman, who acquired full ownership of the company. Stollman sold Wright fifty percent of the company; in return, she assumed half of L. Bernstein's debts.

Initially, Wright only performed clerical duties at L. Bernstein. After receiving several complaints about Stollman's abusive personality, however, she became more active in the company's operations, eventually handling all of L. Bernstein's Connecticut customers. Stollman's customer-relations problems continued, and he began issuing bad checks to produce suppliers. L. Bernstein closed and filed for bankruptcy in November 1991.

In August 1992, Wright received a formal complaint from the USDA alleging that L. Bernstein had committed repeated and flagrant violations of PACA by failing to pay $185,909.00 to sixteen produce sellers between January 1991 and August 1991. In June 1993, Wright agreed to sign a consent order wherein L. Bernstein admitted to these violations of PACA. As a result, any licensed produce company was barred from having "any affiliation" with Wright for at least one year. *See* 7 U.S.C. §§ 499a(b)(10), h(b).

Sometime during the summer of 1993—around the same time that Wright signed the consent order—she began helping Nyden set up his new company, County Produce. According to Wright, she spent between two and twenty hours a week at County Produce doing clerical work. She claims that she was not paid for this work. Although Wright admits that she and her husband guaranteed a loan to County Produce on March 9, 1993, she asserts that this was done merely as a favor to Nyden.

Other evidence indicates that Wright's activities at County Produce included selling produce and serving customers. For example, two separate food purchasers testified that they had been dealing with Wright in making produce purchases from County Produce since November 1993. The chief executive officer for Emerald Financial Corpora-

tion, the bank making the loan to County Produce that Wright and her husband guaranteed, testified that it was his "perception" that Wright operated County Produce.

On August 8, 1993, PACA officially notified Wright by letter that because she had been an officer and stockholder in L. Bernstein, she could "not be employed by or affiliated with another licensee, in any capacity, until July 19, 1994."

On October 12, 1993, Nyden also received official notification of Wright's status as a "restricted individual". By letter, a PACA official informed Nyden that Wright was ineligible to be employed by or affiliated in any capacity with a PACA licensee until July 19, 1994. The letter explained that the terms "employ" and "employment" are defined by PACA to mean *any* affiliation, regardless of compensation. In addition, the letter stated:

> Pursuant to Section 8(b) of the Act, copy enclosed, notice is hereby given that after 30 days from the receipt of this letter, Ms. Linda Wright cannot continue her affiliation with County Produce, Inc. To continue such affiliation after that date will result in the suspension or revocation of its license.

On October 30, 1993, Nyden responded to the USDA with the following: "Ms. Linda Wright is *not* currently employed by County Produce, nor is she affiliated with this company through any form of ownership or self-employment, per section 8(b) of your act."

### C. *Administrative Proceedings*

On June 13, 1994, the USDA filed a complaint against County Produce, which alleged that County Produce violated section 8(b) of PACA by continuing to employ Wright after being notified that Wright's continued employment was prohibited. A hearing was held on March 14, 1995. At the hearing, a USDA official, Clare G. Jervis, recommended to the Administrative Law Judge ("ALJ") that County Produce's license be revoked. The ALJ filed an Initial Decision and Order on July 17, 1995, revoking County Produce's

license. In his Initial Decision and Order, the ALJ found that Wright continued to work for County Produce after Nyden was notified on October 12, 1993, that her affiliation with County Produce was prohibited. The ALJ found that Wright's affiliation with County Produce continued until at least February 1994.[1] As a result, the ALJ concluded that County Produce willfully and flagrantly violated section 8(b) of PACA.

County Produce appealed the ALJ's decision to the Judicial Officer ("JO") on August 24, 1995. The JO upheld the ALJ's decision to revoke County Produce's license. The JO's Decision and Order constitutes the final order of the Secretary of Agriculture. *See* 7 C.F.R. § 2.35.

## II. DISCUSSION

■ County Produce does not challenge the Secretary's conclusion that by employing Wright beyond October 12, 1993—the date that Nyden was informed of Wright's status as a "restricted individual"—County Produce willfully and flagrantly violated section 8(b) of PACA. Rather, County Produce challenges the Secretary's decision to uphold the ALJ's revocation of County Produce's license.

■ This Court may not overturn the Secretary's choice of sanction unless it is " 'unwarranted in law or ... without justification in fact.' " *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (alteration in *Butz*) (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 112–13, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)); *see Harry Klein Produce Corp. v. United States Dep't of Agric.*, 831 F.2d 403, 406 (2d Cir.1987). County Produce does not contend that the Secretary's choice of sanction is "unwarranted in law."[2] Therefore, as long as the Secretary's choice is not "so 'without justification in fact' 'as to constitute an abuse of [the Secretary's] discretion,' " the Secretary's final order must be affirmed. *Butz*, 411 U.S. at 188, 93 S.Ct.

---

**1.** The ALJ noted that there was evidence indicating that Wright still worked for County Produce at the time of the March 15, 1995, hearing.

**2.** Section 8(b) of PACA expressly grants the Secretary the authority to "suspend or revoke the

license of any licensee" who continues to employ "any person" in violation of PACA. 7 U.S.C. § 499h(b).

at 1459 (alteration in *Butz*) (quoting *American Power & Light Co.*, 329 U.S. at 115, 67 S.Ct. at 147); see *Harry Klein Produce Corp.*, 831 F.2d at 406–07.

County Produce argues that the Secretary's choice of sanction constitutes an abuse of discretion because the Secretary failed to consider all of the relevant mitigating facts and circumstances. Specifically, County Produce contends that the Secretary failed to consider that none of County Produce's bills went unpaid; therefore, nobody suffered the harm that PACA was designed to prevent.

At the outset, we disagree with County Produce's contention that the Secretary "failed to consider" these circumstances. The record indicates that these circumstances were in fact considered although ultimately rejected by the Secretary. *Cf. Norinsberg Corp. v. United States Dep't of Agric.*, 47 F.3d 1224, 1227 (D.C.Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995).

In support of its argument that the good financial standing of County Produce compels a reduced sanction, County Produce relies on *Conforti v. United States*, 69 F.3d 897 (8th Cir.1995), *amended and superseded upon denial of reh'g*, 74 F.3d 838 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 49, 136 L.Ed.2d 14 (1996), and *ABL Produce, Inc. v. United States Dep't of Agric.*, 25 F.3d 641 (8th Cir.1994). In both cases, the Eighth Circuit held that in light of PACA's purpose to protect produce suppliers, the Secretary erred by refusing to consider the good financial standing of the produce dealers. *See Conforti*, 74 F.3d at 842; *ABL Produce*, 25 F.3d at 646–47.

As the Secretary correctly noted, however, County Produce's reliance on *Conforti* and *ABL Produce* is misplaced. Both cases are factually distinguishable from the instant case. For example, once the produce dealer in *Conforti* received notification that the USDA could suspend the company's license for continuing to employ a restricted individual, the dealer diligently tried to obtain a bond securing that individual's employment.[3]

See 74 F.3d at 841, 843. Once the produce dealer in *ABL Produce* was notified that he was employing a "restricted individual", he immediately tried to prevent that individual from involving himself in the company's activities. *See* 25 F.3d at 646. In addition, the *ABL Produce* Court considered it to be a "most compelling and unique circumstance" that the "restricted individual" engaged in deceptive acts to hide his activities from the produce dealer. *See id.*

In contrast, although Nyden was warned that he would lose his license if he continued to employ Wright, he never attempted to limit Wright's involvement in County Produce. Nor was Nyden unaware of the extent of Wright's involvement with the company. On the contrary, Wright testified that she took her instructions while at County Produce directly from Nyden.

Moreover, in arguing that the *Conforti* and *ABL Produce* decisions compel a conclusion that the Secretary's choice of sanction was unwarranted, County Produce ignores the fundamental principle that " 'where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy[,] the relation of remedy to policy is peculiarly a matter for administrative competence.' " *Butz*, 411 U.S. at 185, 93 S.Ct. at 1458 (quoting *American Power & Light Co.*, 329 U.S. at 112, 67 S.Ct. at 145) (internal quotation omitted). In the instant case, Clare G. Jervis, a USDA official, testified that revocation of County Produce's license would be the only meaningful sanction. She reasoned that this sanction was warranted in light of the serious nature of County Produce's PACA violation, and also because of the deterrent effect that this sanction would have on County Produce and the produce industry.

The Secretary agreed with this reasoning, stating:

It is unfortunate, and I believe incorrect, that the *ABL Produce* Court used as relevant and mitigating circumstances that there were no unpaid bills and no apparent

---

**3.** Section 8(b) of PACA provides that the Secretary may approve the employment of a restricted individual "after one year following the revocation or finding of flagrant or repeated violation of section 499b of this title, if the licensee furnishes and maintains a surety bond in form and amount satisfactory to the Secretary as assurance that such licensee's business will be conducted in accordance with this chapter." 7 U.S.C. § 499h(b).

harm to anybody, as reasons to lessen the sanction against [petitioner], because such an interpretation contains the potential for great harm to the PACA's deterrent effect envisioned by Congress.

 We must defer to the agency's judgment as to the appropriate sanctions for PACA violations. *See Butz,* 411 U.S. at 185–86, 93 S.Ct. at 1457–58; *American Power & Light Co.,* 329 U.S. at 112–13, 67 S.Ct. at 145–46; *Harry Klein Produce Corp.,* 831 F.2d at 406–07. The USDA is particularly familiar with the problems inherent in the produce industry, and it has experience conforming the behavior of produce companies to the requirements of PACA. *See American Power & Light Co.,* 329 U.S. at 112, 67 S.Ct. at 145–46. We may not substitute our judgment for that of the agency with respect to what sanction will best further the policies of PACA. *See American Fruit Purveyors, Inc. v. United States,* 630 F.2d 370, 373 (5th Cir.1980).

In light of the deference that we must give to the agency's expertise in determining appropriate sanctions, and the fact that the Secretary appropriately considered the relevant evidence, we may not say that the Secretary erred in rejecting County Produce's argument that certain "mitigating" circumstances compelled a reduction in sanction.

### III. CONCLUSION

We conclude that the Secretary's decision to uphold the ALJ's revocation of County Produce's license was not an abuse of discretion. In continuing to employ Wright beyond October 12, 1993—the date that Nyden was informed that Wright's employment was prohibited—County Produce willfully and flagrantly violated section 8(b) of PACA. The Secretary did not err when he failed to reduce this penalty on the basis of County Produce's good financial standing. Accordingly, the petition for review is denied, and the Secretary's final order is affirmed.