# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3954

_____

State of North Dakota, ex rel. Carol K.      *
Olson, Executive Director, North             *
Dakota Department of Human Services,         *
                                             *
                                             *
        Appellee,                            *
                                             *
   v.                                        *   Appeal from the United States
                                             *   District Court for the District
Centers for Medicare and Medicaid            *   of North Dakota.
Services; Thomas A. Scully, in his           *
official capacity as Administrator of        *
the Centers for Medicare and Medicaid        *
Services; United States Department of        *
Health and Human Services; Tommy             *
G. Thompson, in his official capacity        *
as Secretary of the United States            *
Department of Health and Human               *
Services,                                    *
                                             *
        Appellants.                          *

_____

No. 03-4036

_____

James W.  Ellenbecker, Secretary,            *
South Dakota Department of Social            *

Services; State of South Dakota     *
Department of Social Services,     *
    *
       Appellees,     *
    *
       v.     *    Appeal from the United States
    *    District Court for the District
Centers for Medicare and Medicaid     *    of South Dakota.
Services; Thomas A. Scully, in his     *
official capacity as Administrator of     *
the Centers for Medicare and Medicaid     *
Services; United States Department of     *
Health and Human Services; Tommy     *
G. Thompson, in his official capacity     *
as Secretary of the United States     *
Department of Health and Human     *
Services,     *
    *
       Appellants.     *

_____

Submitted: October 22, 2004
Filed: April 6, 2005
_____

Before MORRIS SHEPPARD ARNOLD, GIBSON, and SMITH, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Centers for Medicare and Medicaid Services (CMS), an agency of the Department of Health and Human Services (HHS) that (along with the states) administers Medicaid, appeals from summary judgments entered against it in district courts in North and South Dakota. North and South Dakota had claimed 100 percent federal reimbursement for some Medicaid services provided to Native Americans by

non-Indian Health Service facilities. CMS reduced the reimbursement percentage, disallowing some of the states' claims. The Department of Appeals Board of HHS (DAB) upheld CMS's decisions, but the district courts reversed. We reverse and remand to the district courts for entry of judgments upholding the decisions of the DAB.

I.

Prior to the enactment of the Indian Health Care Improvement Act of 1976 (IHCIA), the Indian Health Service (IHS) was ineligible to receive payments from Medicaid for Medicaid services provided at IHS facilities. To increase funding for health-care services and facilities for Native Americans, the IHCIA made IHS eligible for Medicaid reimbursement. *See* 42 U.S.C. § 1396j(a). Normally a state pays for Medicaid services not covered by private insurance, and the federal government reimburses the state for a percentage of its cost, known as the federal medical assistance percentage (FMAP). Because IHS facility services were entirely federally funded before the IHCIA, Congress increased to 100 percent the FMAP applicable to Medicaid services "received through an Indian Health Service facility." 42 U.S.C. § 1396d(b). Thus the IHCIA avoided shifting the federal government's pre-IHCIA responsibility for Native American health care onto the states.

The scope of the Medicaid services reimbursed at the 100 percent FMAP depends on the meaning of "received through an Indian Health Service facility." North and South Dakota argue that the 100 percent FMAP applies to referred services that constitute IHS facility services, as defined in two Medicaid regulations, and that are provided by referred service providers with which IHS facilities have service contracts. In support of their position, the states cite a 1997 CMS memorandum from the acting director of the Medicaid Bureau. According to the memorandum, "[r]eferred services, provided through a contractual arrangement, can also be considered provided 'through an IHS facility' and reimbursed at the 100 percent FMAP rate as long as these are services that could be provided as a 'facility service,'

as referenced by [42 C.F.R. §§ 440.10, 440.20]." The DAB, however, interpreted the CMS memorandum as requiring a contractual relationship in which the non-IHS provider is an independent contractor, a relationship that a contract of negotiated rates for referrals fails to create. *See* 42 U.S.C. § 1395x(w)(1).

II.

In interpreting the scope of the phrase "received through an Indian Health Service facility," we need not consider the 1997 CMS memorandum or any other agency pronouncement if the language of the IHCIA or its legislative history addresses the question. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9, 845 (1984); *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 936 (8th Cir. 2000). Only when statutory language is ambiguous and its accompanying legislative history unclear do we decide whether to defer to an agency's policy for implementing a statute's requirements. *Chevron*, 467 U.S. at 845.

In the case of the IHCIA, the statute suggests that there is no requirement that services be provided physically within an IHS facility to qualify for the 100 percent FMAP, but the language does not compel any particular interpretation. In the same section of the IHCIA in which Congress used the phrase "received through" to identify the services eligible for 100 percent FMAP, IHCIA § 402(c) (codified at 42 U.S.C. § 1396d(b)), Congress described the IHS services newly eligible to receive Medicaid funds as "services *provided in* Indian Health Service facilities," IHCIA § 402(b) (codified at 42 U.S.C. § 1396j(c)) (emphasis added). Given the proximity of the phrase "received through" and the phrase "provided in," they might convey two different meanings, with the latter phrase being the more limited of the two. Nevertheless, even if "received through" has a broader connotation than "provided in," the statute does not specify how far "received through" should extend. Thus the statutory language is susceptible to multiple interpretations and does little to resolve the present controversy.

The legislative history, on the other hand, is clear and consistent when it discusses the scope of the 100 percent FMAP. Nowhere does it suggest that the 100 percent FMAP applies to services provided outside of IHS facilities, such as the referrals at issue in this case. Instead, each committee report that discusses the scope of the 100 percent FMAP, which includes reports from one Senate committee and two House of Representatives committees, says that the special FMAP applies to services *provided in* IHS facilities. H.R. Rep. No. 94-1026, pt. 1, at 108 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2652, 2746; *id.*, pt. 3, at 7, *reprinted in* 1976 U.S.C.C.A.N. at 2782; S. Rep. No. 94-133, at 128 (1975). Further, the report from the Interstate and Foreign Commerce Committee of the House of Representatives explains that the "Committee approved [the 100 percent FMAP] because ... since the 100 percent matching is *limited to* services *in* IHS facilities, it is clearly being paid for Indians ... who are already eligible for full Federal funding of their services." H.R. Rep. No. 94-1026, pt. 3, at 21, *reprinted in* 1976 U.S.C.C.A.N. at 2796 (emphasis added). Given the legislative history's unequivocal stance, we conclude that Congress's use of "received through" rather than "provided in" does not cover referred services such as those at issue in this appeal.

Because our inquiry stops if the legislative history explains the statutory language, even when that language would otherwise be ambiguous, *cf. Davis v. United States*, 495 U.S. 472, 479-81 (1990), we do not reach the matter of what deference we might owe to the relevant agencies' interpretation of the statute. Based on the legislative history alone, we reverse the district courts' judgments.

## III.

North and South Dakota argue that, in the event that we reverse the district courts' interpretation of the IHCIA, we still should not require them to repay the difference between the 100 percent FMAP and the regular FMAP for referred services that they billed to CMS prior to the DAB's decisions. The 1997 CMS memorandum, they contend, authorized a 100 percent FMAP for referred services, and the DAB's

decisions should not be applied retroactively to defeat North and South Dakota's reasonable reliance.

Because our construction of the scope of the 100 percent FMAP stems from the IHCIA's legislative history and not from past agency interpretations, ordering North and South Dakota to disgorge past overpayments simply implements the IHCIA's requirements, which are unchanged. If our interpretation of the IHCIA causes a change in policy toward referred services, that is only because CMS's prior policy was unauthorized by the IHCIA. Thus what North and South Dakota really ask us to do is to estop CMS from seeking repayment, since the states allegedly relied to their detriment on the advice CMS offered in its 1997 memorandum and failed to repudiate in subsequent audits of North and South Dakota's Medicaid billing practices. Equitable estoppel is granted against the government only in extraordinary situations, however. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 423 (1990); *Conforti v. United States*, 74 F.3d 838, 841 (8th Cir. 1996), *cert. denied*, 519 U.S. 807 (1996). Further, when funds that belong to the United States treasury are at stake, constitutional principles embodied in the separation of powers doctrine and the appropriations clause of the Constitution, U.S. Const., Art. I, § 9, cl. 7, strongly militate against estoppel. "If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the [Appropriations] Clause reposes in Congress in effect could be transferred to the Executive." *Richmond*, 496 U.S. at 428; *see also Microcomputer Tech. Inst. v. Riley*, 139 F.3d 1044, 1052 (5th Cir. 1998). North and South Dakota consequently must return to CMS the amounts that the agency overpaid them when it reimbursed them at the 100 percent FMAP for referred services provided by non-IHS facilities.

IV.

We therefore reverse the district courts' judgments and remand the cases to the district courts with instructions to enter judgments upholding the decisions of the DAB.

JOHN R. GIBSON, dissenting.

I respectfully dissent. I would affirm on the basis articulated in the district court's order.

_____